Page 1

1        UNITED STATES DISTRICT COURT

2       FOR THE DISTRICT OF COLUMBIA

3  - - - - - - - - - - - - - - - -X

4  JAMES MALLOY,                    :

5            Plaintiff              :

6       v.                          : No. 04-1117(RJL)

7                                   :

8  ALPHONSO R. JACKSON,             :

9            Defendant              :

10 - - - - - - - - - - - - - - - -X

11           DEPOSITION OF JOHN ROBINSON

12                       Washington, D.C.

13                       Friday, August 11, 2006

14      Deposition of JOHN ROBINSON, called for

15 examination at 11:15 a.m., at the law offices of Robert

16 C. Seldon & Associates, P.C., 1319 F Street, N.W., Suite

17 305, Washington, D.C., before Gary S. Howard, a notary

18 public in and for the District of Columbia, when were

19 present on behalf of the respective parties:

20

21

22

1       Q       Okay. So now, let's go back to page 2 and
2       go up to the middle paragraph.
3       A       Okay.
4       Q       I'm sorry. Go to the second paragraph on
5       the page.
6               Prior to the completion of the interview,
7       and while still under oath, Malloy was requested to
8       provide any official government ledgers, notes, and
9       diaries he maintained that would be pertinent to
10      the ongoing investigation relating to Chapman.
11      A       Yes.
12      Q       And it then says -- I take it you recall
13      putting that question, that request, to Mr. Malloy.
14      A       I believe this was right at the -- this
15      was in Dallas -- not Dallas, but Ft. Worth, at the
16      office.
17      Q       And it then says -- Malloy stated the
18      only diaries he maintained were calendar diary
19      books issued by the Federal Law Enforcement
20      Officers Association, motioned to them and said
21      that they were lying on the floor, and initially
22      stated that he would provide copies of the diaries

1    **relating to the pertinent years.**

2              **So is it right or wrong that at that**
3    **moment, you, as part of the investigation, had**
4    **access to Mr. Malloy's diaries?**

5    A    At that point, it was becoming lunch
6    time. We broke for lunch and I was of the
7    assumption after we came back from lunch that I
8    would look at those diaries.

9              It was our next course of action. That's
10   fine.

11             And I remember Mr. Malloy, subjectively
12   speaking, made some comments -- well, I've got some
13   personal stuff in there, as well. And I said, okay,
14   I understand that, as anybody would.

15             In any event, there was no problem
16   whatsoever. And we went to lunch.

17             We came back from lunch, and that's when
18   Mr. Malloy came in to me, very respectfully, I
19   might say, and advised me that he had been in
20   contact with an attorney, or whatever. He handed me
21   a little note and said that he had changed his mind
22   and he's not going to do that.