Oct 15 02 01:43p         KINKO'S                    817-732-7026              p.13



U.S. Department of Housing and Urban Development
Region VI Office of Inspector General for Investigation
819 Taylor, Room 13A09
Post Office Box 17149
Fort Worth, Texas 76102
(817) 978-9310  FAX (817) 978-9373

September 30, 2002

MEMORANDUM FOR: Cortez Richardson, Special Agent, 6AGI

FROM: James M. Malloy, Assistant Special Agent in Charge, 6AGI

SUBJECT: Proposed Five (5) Calendar Day Suspension

    This is notice that I am proposing to suspend you for five (5) calendar days from your position of Special Agent, GS-1811-13, in the Office of Inspector General (OIG), U. S. Department of Housing and Urban Development (HUD), no sooner than one day from the date that you received this memorandum. This proposed action is issued in accordance with Part 762 of Title 5 of the Code of Federal Regulations and HUD Handbook 752.2 REV-2. This action is proposed in order to promote the efficiency of the service.

    This action is based on a review of the issues presented to me and is based on a part of the following Charges and Specifications:

Charge: Violation of OIG Policies Governing the Use of Operation Safe Home Expenses.

Specification:

    With regard to the Operation Safe Home (OSH) expenses cited as questionable, I found the allegations contained in the report are without merit. The cited audit was performed by an auditor who had no experience in OSH allowed expenses nor was he versed in the activities allowed in the expenditure of OSH funds. I found that this audit was replete with personal opinions and incorrect analysis of records. It is well known with OIG that many District utilized OSH funds to pay for OSH initiative expenses such as guns, police equipment, training for task force officers, vehicles outfitted with OSH logos, cellular telephone rentals, supplies, electronic equipment used in connection with the OSH initiative, automobile rentals, etc. to name a few items allowed and which



DEPOSITION
EXHIBIT
#10

were considered as having a germane relationship or nexus to the OSH mission. Inspector General Susan Gaffney in her January 31, 2001 memorandum acknowledged that great confusion exited with respect to OSH Initiatives. Her January 31, 2001 memorandum states in part "this statement of policy eliminates the ambiguity introduced by Section 22-a 'Investigative Expenses'". The memorandum goes on to outline authorized standards for OSH operational funds. Clearly confusion reigned within OIG as to what investigative expenses were in the past. As of late, the former Assistant Inspector General for Investigation (AIGI) acknowledged that there was a broad interpretation allowed for in the Office of Inspector General Manual (OIGM) 3000. (It should be noted that Special Agent (SA) Cortez Richardson never attended the Special Agents in Charge (SACs) meeting wherein OSH expense issues were discussed and thus he (Richardson) had to rely on what SAC Jeffrey Finn told him was proper.) No written documentation was ever disseminated from the Office of Inspector General (OIG) Headquarters to record the contents of these meetings; thus, the OSH rules were subject to broad interpretation by the SACs attending these meetings. Thus, it appears that SA Richardson was only following lawful orders issued by his superior, and on the one occasion where he had serious questions, Richardson almost immediately raised his concern regarding the Denver towing expense to his immediate supervisor, who stated he would hand the issue. Prior to instituting OSH, U. S. Department of Housing and Urban Development (HUD) OIG agents were issued very limited equipment. Using this as a standard for equipment that should be paid for with District funds, any additional equipment purchases could be construed as "for Safe Home purchases" subject to the interpretation of the respective Special Agent in Charge.

Charge: Conduct Unbecoming a Federal Law Enforcement Officer.

Specification:

While there is conflicting information in the witness's statements as the exact intent and/or type of damage done to the tow truck, it is clear that you did cause damage to the tow truck while at JD's Nightclub. In fact, you admit that you had your foot on the door and that you pushed off of the door causing damage to the door. Also, it appears that you caused damage to the license plate on the tow truck. It though you stated the damage was accidental; however, you considered the damage of such magnitude that you returned to apologize to the tow truck operator and compensation was made with regard to the damage you caused to the vehicle.

Oct 15 02 01:44p        KINKO'S                     817-732-7026              p.15

Charge: <u>Falsification of Records Relating to a HUD/OIG Operation Safe Home Expenditure.</u>

Specification:

With respect to the falsification of HUD/OIG records, there are undisputed facts and testimony that you, in fact, did alter the HUD/OIG receipts. The report documents that you, however, were issued a direct order by your supervisor and I believe that your failure to carry out that order could have resulted in insubordination charges against you by SAC Finn. You did, however, make a good faith effort to report the altering of the document to your immediate supervisor, Assistant Special Agent in Charge (ASAC) Charles Freyermuth as soon as possible and placed HUD/OIG on notice of the violation and fulfilled your duty to report the potential misconduct by the SAC. Your immediate supervisor even specifically told you he would handle the issue and you subsequently met with SAC Finn and ASAC Freyermuth to raise your concern regarding the alteration of the Denver towing bill.
Investigation

Charge: <u>Lack of Candor During an Official Investigation.</u>

Specification:

The report of investigation makes the assertion that you were not fully truthful during the OIG investigation, and the report cites a November 17, 2001 interview as the basis. With respect to the potential question as to lack of candor, there is testimony that you only answered questions asked of you. While it is a concern that you did not volunteer information, it appears that you were responsive to the very specific questions asked by those conducting the interview.

Charge: <u>Whether the Special Agent Engaged in and/or Failed to Properly Report Violation of Law, OIG Policy, Fraud, Waste and/or Abuse.</u>

Specification:

I have reviewed the evidence detailed in the OIG Report of Investigation (ROI) and do not feel that I have enough information about the facts of these matters or particularly in your perception of these specific things as they occurred that substantiates the allegations that you failed to properly report violations of law, OIG policy, fraud, waste, and/or abuse. It is clear to me that you did participate in unprofessional conduct by furnishing an "X" rated tape at the request of your (then) Special Agent in Charge (SAC) for an Agency (HUD) related trip.

<u>Charge: Whether the Special Agent Engaged in Misuse of Government Telephone Service.</u>

<u>Specification:</u>

I have reviewed the information provided in the ROI regarding an apparent cellular telephone assigned to you while you were stationed in the Denver Office. I have looked at these cellular telephone records and it appears there may have been some personal telephone calls made even though you have advised me other HUD agents and task force personnel assigned to Operation Safe Home (OSH), often used this telephone as well.

Summary

One of the most fundamental concepts in every employee/employer relationship is the understanding that an employee is expected to uphold the highest standards for the organization. In fact, no organization can successfully function where the environment is one that allows employees to disregard instructions and principles of conduct as stated to their supervisor or HUD/OIG.

Your actions, as described above, violate this principle, and cannot be condoned or tolerated. Your misconduct is egregious and proposing a five (5) day suspension is appropriate for this situation and will serve to promote the efficiency of the service. In coming to this conclusion I have also considered the following mitigating and aggravating factors:

<u>Aggravation:</u>

As an aggravating factor is the nature of your position. All OIG employees are held to a higher standard. See OIG Manual Chapter 1083, Para. 1-2 ("In addition to these authorities, OIG employees by the very nature of their job responsibilities, are required to maintain higher standards of conduct than others in the Department.") The OIG was created by the Inspector General Act of 1978 as an independent entity responsible for audit, investigation, fraud control as well as preventing and detecting fraud, waste and abuse in HUD programs and operations as well as the operations of contractors and grantees. By engaging in the misconduct described in this proposal, you have undermined your credibility. Your disregard for the trust and confidence placed in you by this organization and by me personally has caused me to lose confidence in your ability to act independently within the expected parameters in positions such as yours. This aggravating factor, in and of its self, serves to enhance the penalty that should be assessed for your misconduct. In other words, I believe that you occupy a position that demands a higher level of trust and confidence within the employer/employee relationship,

and the essence of your misconduct harms that trust.

In determining what action to take, I have reviewed the Disciplinary and Adverse Actions, OIGM 1000, August 2000. The Table states that Dishonest, Infamous, or Notoriously Disgraceful Conduct (including discreditable involvement with local or Federal Law Enforcement Officers) is an offense warranting penalties ranging from Reprimand to Removal, for a first offense. Thus, I find that a 5-day suspension is consistent with OIGM 1000, August 2000.

Mitigation.

As a mitigating factor, I have considered the fact that you have over four years of Federal civilian service, all with HUD/OIG. Also, the only charge I find clear cut and appears to be events totally under your sole control is the tow truck damage. The others have mitigating circumstances and to some extent, so does the tow truck incident.

Nevertheless, based on the seriousness of the offenses, the nature of your position, and the effect that your misconduct with respect to the tow truck has had upon my confidence in you, I do not feel that the mitigating circumstances outlined above warrant a less severe penalty. Therefore, I am proposing your five (5) day calendar suspension for such cause as will promote the efficiency of the service.

Procedures.

The Deciding Official in this case will be Larry Chapman, Special Agent in Charge, 819 Taylor Street, Room 13A09, Fort Worth, Texas 76102, telephone 817-978-9310. You have a right to reply to this notice orally or in writing, or both, and to furnish affidavits and/or other documentary evidence in support of your answer. Full and proper consideration will be given to any material or information you furnish in a timely manner. You will be permitted up to fourteen (14) calendar days from the date you receive this proposed action to submit a response. Consideration will be given to extending this fourteen (14) day period if you submit a request in writing to the Deciding Official before the expiration of the allowed time period, stating your reasons for the request for additional time to respond to this proposal. You are not entitled to official time to prepare your oral and/or written responses.

If you wish to make a written reply, it should be submitted to the Deciding Official within the fourteen (14) day period noted above. If you written reply is mailed, it must be received prior to the expiration of the fourteen (14) day period, and should be marked, "To Be Opened by Addressee Only". To present an oral reply to Mr. Chapman, please

contact him directly to arrange an appropriate date and time for your response meeting. Mr. Chapman may choose to hear the reply himself, or he may designate an appropriate official to hear the reply on his behalf. Be advised, however, that an oral meeting is not a hearing and the appearance of witnesses will not be permitted. If no response is received, a written notice of final decision will be issued as soon as practicable after the expiration of the time allowed you to answer.

An attorney or other representative of your choice may represent you. Before a representative may act on your behalf on this matter, you must designate that person in writing to the Deciding Official identified in the preceding paragraph. Your representative, however, may be disallowed if he or she is an employee of the Department whose activities as representative could cause a conflict of interest or position, or if his or her release would give rise to unreasonable costs to the Government, or if he or she cannot be released from official duties because of work assignments. You may present your oral reply on official time (administrative leave), and if your representative is an employee of the Department, he or she may attend the oral reply session on official time.

You will be furnished a written notice of decision with specific reasons for that decision within twenty-five (25) calendar days after receipt of your reply, or as soon as practical following expiration of the time allowed you to reply. If it is necessary for the decision to be delayed beyond that time period, you will be so notified.

You may review the material upon which this proposal is based. In the event you desire to review the material, please make such a request directly to me.

No decision on this matter will be made until all material relied upon supporting the reason for the proposed action, including timely written and/or oral reply, has been considered. You will be given a memorandum containing the decision on this matter. It will state a decision to (1) take the proposed action; (2) take a lesser action; or, (3) not take the proposed action.

Copies of the Handbook and pertinent statutes and regulations governing this action may be reviewed by contacting David A. Nuhfer, Labor Relations Specialist, Bureau of the Public Debt, Room 206-2, Parkersburg, West Virginia 26106-1328, telephone 304-480-6126.

Given the facts above, and the fact that you have been an exemplary agent since transferring to this Region and have "hit the ground running" and become an immediate contributor to this Region, I am recommending that you be given five (5) days suspension.

I received a copy of this Memorandum:

_____    9/30/02
Cortez Richardson                  Date