**ATTACHMENT G**



U.S. Department of Housing and Urban Development
# Office of Inspector General
451 7th St., S.W.
Washington, D.C. 20410-4500

March 19, 2003

**MEMORANDUM FOR:** EEO Investigator

**FROM:** Richard Johnson, GC

**SUBJECT:** EEO complaint of James Malloy - Complaint IG 03 02 M

Mr. James Malloy, the former Assistant Special Agent in Charge (ASAC) in Region 6 for the Office of Inspector General (OIG), has alleged that the agency discriminated against him. The Agency denies that it unlawfully discriminated against Mr. Malloy for any reason.

Because the allegations of Mr. Malloy provide little detail to place actions in context, I am providing you with management's explanation of the events that occurred. We ask that you consider it in deciding what information you will request and what witnesses are necessary to conduct an impartial investigation.

Atch - OIG Management Position Paper

OIG MANAGEMENT POSITION PAPER

EEO complaint of James Malloy - Complaint IG 03 02

James Malloy, a former Assistant Special Agent in Charge (ASAC) for Region 6 of the Office of Inspector General (OIG) has alleged that the agency discriminated against him in (1) conducting an unwarranted investigation of him and placing him on administrative leave during the investigation; (2) denying him an opportunity to apply for vacant SAC or ASAC positions in Houston; (3) forcing him to be the proposing official concerning disciplinary action against two subordinates; (4) relieving him of all managerial responsibilities upon termination of the administrative leave; (5) denying him restoration of leave; (6) threatening him with a directed transfer and or letter of discipline; and (7) forcing him to retire on January 3, 2003. He bases his complaint on his race (Native American), sex (male), and age (over 40). The Agency denies that it unlawfully discriminated against James Malloy for any reason.

This complaint has its beginning in an investigation that was initiated against Mr. Malloy's former supervisor, Special in Charge (SAC) Larry Chapman. Larry Chapman retired from his position on September 30, 2002, after the investigation was opened against him, but before it was completed. Mr. Chapman has since filed an EEO complaint alleging that he was constructively removed. Shortly after initiation of the investigation against Mr. Chapman, all of the agents in the region gathered for a week for firearm and other training. It was alleged that during this week, the agents were told of the investigation against Mr. Chapman, and Mr. Malloy told the agents they had to "circle the wagons". It was also alleged that he offered that the agents may not remember particular events or facts, by saying, "they can't make you remember things." Mr. Malloy was initially interviewed as a witness regarding the allegations against Mr. Chapman on September 19, 2002. At the conclusion of the interview he was asked to produce a diary that he maintains to support his claim for Law Enforcement Availability Pay (LEAP). He agreed he would provide the diary during the interview but subsequently refused to do so. The investigators reported that he had failed to cooperate with the investigation.

If Mr. Malloy made the statements as alleged and failed to cooperate with the investigation of Mr. Chapman, he could be charged with conduct unbecoming a supervisor and potentially removed or demoted. See, LaChance v. MSPB, 147 F.3d 1367 (Fed. Cir. 1998)(unpublished decision remanding a charge of conduct unacceptable and inappropriate behavior by a supervisor when the supervisor's conduct had the potential to intimidate a witness in an investigation); Taylor v. U.S.P.S., 49 MSPR 155 (1991)("As a supervisor the appellant owes a duty of loyalty to the agency, and thus it was improper for him to recommend to Bonner that she not talk with the investigators."); Brown v. FAA, 15 M.S.P.B. 224 (1983) aff'd in part, rev'd in part on other grounds, 735 F.2d 543 (Fed. Cir. 1984), on remand, 21 MSPR 572, 573 (1984)(disloyal statements by a supervisor justify demotion to non-supervisory grade). The failure to cooperate in an investigation is particularly serious in cases involving law enforcement officers. Weston v. Dept. of Housing & Urban Development, 724 F.2d 943 (Fed. Cir. 1983); Brown v. Dept. of Justice, 22 MSPR 92, 94 n.2 (1984), on remand after being vacated, 31 M.S.P.R. 211(1986)(removal mitigated to 30 days suspension for refusal to cooperate). A failure to cooperate naturally leads to a loss of a supervisor's confidence in the employee's dependability and therefore to a significant breach in the employer-employee relationship. Brown, 22 MSPR at n.2. While Mr. Malloy later offered to cooperate, that change in attitude goes to reasonableness of the punishment, not whether Mr. Malloy committed an offense. See, Franklin v. Dept of Justice, 71 MSPR 583, 591 (1996)(30 day suspension was proper for one-time refusal to cooperate with an investigation). Even considering all of this, it still must be noted that no adverse action was ever taken against Mr. Malloy by the Agency and he was never threatened with any adverse action.

On September 30, 2002, Mr. Chapman and Mr. Malloy proposed and decided to impose discipline on two subordinates of Mr. Malloy. Mr. Malloy issued the proposal letter on September 30, 2002. Mr. Chapman issued the decision letter that same day imposing punishment. Neither Mr. Chapman nor Mr. Malloy coordinated the disciplinary actions with the Human Resource Division (HRD) or the Office of Legal Counsel (OLC). In doing so, they violated agency procedures. A "Proposing Official" is required by OIG Manual Chapter 1752, para. 1-7.D.3. to evaluate the facts and develop a proposal notice

with the assistance of the HRD and OLC. In addition, supervisors in general are required to obtain the advice of the Human Resource Division and Office of Counsel when taking any disciplinary action. See, OIG Manual Chapter 1752, para. 1-7.B.3. In addition, para. 2-1.D. states, "Management must seek advice from the HRD, ..., when contemplating a disciplinary or adverse action... . If Mr. Malloy purposefully violated the agency's procedures in order to avoid imposing a consistent and appropriate penalty out of favoritism to the subordinates, or to purposefully avoid receiving advice from HRD or the OLC, that could be misconduct for a supervisor. Rogers v. DoJ, 60 MSPR 377 (1994) (providing an inflated performance evaluation out of favoritism is improper supervisory conduct).

As a result of these allegations, an investigation was opened on Mr. Malloy. He was informed that he was a subject and interviewed on October 10, 2002. That same day he was placed on administrative leave by the Deputy Assistant Inspector General for Investigations pending conclusion of the investigation. The memorandum placing him on administrative explained the reason for the action. As the MSPB stated in Brown v. Dept. of Justice, 22 MSPR 92, 94 n.2 (1984), it is natural that his supervisors may have lost confidence in Mr. Malloy's loyalty and dependability to supervise the region. During the October 10 interview, Mr. Malloy admitted that someone may have said that the employees needed to circle the wagons at a meeting of the administrative staff, but it was intended to mean the employee must use government property properly. (Transcript p. 88-89). He also confirmed that although an employee from the HRD service provider had called him twice regarding the disciplinary action on one of the subordinates, Mr. Malloy never coordinated the action with HRD or sought their advice. An investigation was opened against Mr. Malloy based on allegations that he failed to follow OIG policy and unprofessional conduct. There is no evidence whatsoever to show that the initiation of the investigation was based on Mr. Malloy's race, sex or age. The investigation was initiated before Mr. Malloy invoked the EEO process. Mr. Malloy contacted an EEO counselor on November 17, 2002.

The Agency denies Mr. Malloy's allegation that anyone in the agency intended that he propose the harshest punishment possible against the two subordinates. Mr. Malloy was tasked to be the "Proposing Official" for the two subordinates, because that responsibility was appropriate under established agency procedures. See, OIG Manual Chap. 1752, Section 1-6. Normally the supervisor of the employee is the "Proposing Official", and the second-level supervisor is the "Deciding Official". Mr. Malloy was the supervisor of the two employees he disciplined. He was never told what punishment to impose and in his interview he admits no one told him he had to propose a removal or any penalty. (p. 96). In fact, in his EEO complaint narrative attachment he says, "No instructions were ever given by AIGI Haban or Deputy AIGI Salas regarding how I should go about handling these two matters." The Agency was perfectly willing to leave the decision solely to his discretion. There is no evidence that any person in the Agency told Mr. Malloy that a particular punishment was expected for these two employees. Mr. Malloy has never credibly explained why the Agency suddenly wanted to discriminate against these two employees on the basis of their race or ethnicity, and that allegation is false.

Mr. Malloy's superiors never threatened discipline or other adverse action either before or during the investigation. The decision by Mr. Malloy to retire was a personal decision and was not coerced by the agency nor a result of discrimination. Mr. Malloy was not harassed, and conducting an investigation is not a change in a term, condition, or privilege of employment, which is required by Title VII; and in that regard Mr. Malloy fails to state a claim under Title VII. See, Breaux v. City of Garland, 205 F.3d 150 (5th Cir. 2000) (investigating alleged violations of departmental policies is not an adverse employment action); De Rugg v. West, 106 F.Supp. 2d 289 (D.P.R. 2000) (investigations of personnel charges are not considered adverse employment actions under Title VII); Ludwig v. Northwest Airline, Inc., 98 F.Supp. 2d 1057 (D. Minn. 2000) (even if the investigation was conducted with unusual vigor, there was no material alteration in the terms or conditions of employment); Watson v. Lucent Technologies, Inc., 92 F.Supp. 2d 1129 (D. Kan. 2000); Serrato v. Henderson, Appeal No. 01A10152 (May 31, 2001) (requiring an employee to participate in an investigative interview does not affect a term, condition, or privilege of employment where no action was taken against the complainant);

Antonelli v. O'Neil, Appeal No. 01A02644 (Mar. 28, 2001) (allegation that complainant suffered a "grueling agency inspection which had no merit" does not state a claim); Smith v. Slater, EEOC Appeal No. 01995181 (Jan. 12, 2001)(complainant was not an aggrieved employee as a result of being subjected to an investigation by the Office of Inspector General which did not result in any disciplinary action); Skruch v. Cohen, Appeal No. 019770170 (Aug. 21, 1997) (employee suffered no personal loss or harm as a result of how an OIG investigation was conducted).

This case is remarkably similar to the case of Woodward v. Dept. of the Treasury, 42 Fed. Appx. 436 (Fed. Cir. 2002). In that case, an income tax examiner resigned one day after being informed that the Inspector General wanted to interview him about a case he had worked on. Like Mr. Malloy, he also attempted to rescind his resignation claiming that it was caused by agency discrimination. The Administrative Judge determined that Mr. Woodard should have cooperated with the investigation and challenged its results rather than resigning before the investigation was complete, and therefore the resignation was voluntary, and not coerced.

Mr. Malloy also alleges that after filing a EEO complaint, the Agency relieved him of all managerial responsibilities upon termination of his administrative leave; denied him restoration of leave; threatened him with a directed transfer and or letter of discipline; and forced him to retire on January 3, 2003. The Agency denies these actions occurred on account of his participation in the EEO process, or any other unlawful reason. It is noted that the other ASAC in the region did receive a directed reassignment.

Conclusion. It is unknown why Mr. Malloy felt it was necessary to retire. That was a personal decision made by Mr. Malloy. He was under investigation at the time. It was legitimate investigation and was initiated prior to Mr. Malloy invoking the EEO process. Mr. Malloy fails to allege how that investigation affected any term, condition, or privilege of employment. There is also no evidence that the Agency was demanding any particular punishment against any employees supervised by Mr. Malloy, and it was proper under the agency's regulations that Mr. Malloy be the proposing official in these cases. Mr. Malloy has also failed to establish any connection between the various bases for discrimination he has raised and any agency action.