**ATTACHMENT O**

CHAPTER 1083 Ä STANDARDS OF CONDUCT AND OTHER REQUIREMENTS
SECTION 1. GENERAL

1Ä1. PURPOSE. The purpose of this Chapter is to transmit to Office of Inspector General (OIG) employees the Standards of Conduct for HUD employees. These Standards (see Appendix 1) were most recently revised on July 17, 1987. All Standards of Conduct requirements that are applicable to HUD employees in general are also applicable to OIG employees. The revised regulations provide for the Inspector General to be a Deputy Standards of Conduct Counselor, and as such to carry out the responsibilities of the Department Counselor as outlined in the regulations.

Since extensive changes have been made to the regulations, all OIG employees should read them carefully and become familiar with their provisions. The first four pages of Appendix 1 summarize changes made to the previous regulations. In addition to transmitting the Standards of Conduct regulations, this Chapter establishes additional requirements for OIG employees that are not covered in the Department's Standards of Conduct.

1Ä2. BACKGROUND. On July 11, 1958, Congress enacted a Code of Ethics for Government Service. Executive Order 11222, signed on May 8, 1965, superseded previous Executive Orders, setting forth Standards of Conduct for government employees. This Order authorized department and agency heads to issue regulations, approved by the Office of Personnel Management, implementing certain provisions of the Order. Other authorities are also derived from the provisions of 18 U.S.C. Sections 201Ä209 and the Ethics in Government Act of 1978, 5 U.S.C. App. The Standards of Conduct governing employees of the Department appear in Title 24, Code of Federal Regulations (CFR), Part 0.

In addition to these authorities, OIG employees, by the very nature of their job responsibilities, are required to maintain higher standards of conduct than others in the Department. The Inspector General Act of 1978 provides that, among other things, each OIG will: (a) conduct audits and investigations relating to programs and operations of the department/agency; (b) recommend policies to promote economy and efficiency and to prevent and detect fraud and abuse in programs and operations; and (c) keep the department/agency head and the Congress fully informed concerning fraud and any other serious problems, abuses, and deficiencies found through audits and investigations.

Further, the Quality Standards for Federal Offices of Inspector General, prepared by the President's Council on Integrity and

    Ä1Ä   August 1989

| OIGM Chapter 1083 |  r X 1

Efficiency (PCIE), require that Inspectors General and OIG staffs "... should consider not only whether they are independent and whether their own attitudes and beliefs permit them to be independent, but also whether there is anything about their situation which might lead others to question their independence. All situations deserve consideration since it is important that the OIG be independent and impartial in fact and in aDDearance."

In order to carry out the responsibilities set forth in the Inspector General Act and the PCIE Standards, OIG employees must conduct themselves properly. Since our mandated duties include auditing and investigating the operations of others, we need to make sure that our own operations are in order. Criticism will be more quickly voiced concerning questionable actions of OIG personnel.

sfcTInN ?. FINANCIAL INTERESTS

2Ä1. BACKGROUND. The Inspector General Act of 1978 requires the Inspector General to comply with General Accounting Office (GAO) Standards for Audit of Governmental Organizations, Programs, Activities, and Functions. The GAO Standards, in turn, require audit organizations and individual auditors to be free from personal or external impairments to independence. Among these impairments are financial relationships that might cause the auditor to limit the extent of an inquiry, to limit disclosure, or to weaken audit findings in any way. Likewise, the PCIE Quality Standards for Federal Offices of Inspector General require that investigators be free of financial relationships that might affect the extent of the inquiry, limit disclosure of information, or weaken the investigative work in any way. HUD Standards of Conduct regulations require certain employees to file confidential financial disclosure statements, and in accordance with 24 CFR Section 0.735Ä302 (a)(3), (a)(4), and (c), appropriate positions have been established as set forth in Paragraph 2Ä2 below.

2Ä2. PROCEDURES. In order to satisfy the Standards of Conduct requirements as well as those of the GAO and the PCIE, the Confidential Statement of Employment and Financial Interest, Form HUDÄ844, will be filed by appropriate OIG employees (see Page 3) by August 31 of each year. The form must be amended, when necessary, to reflect the current situation of an employee at all times. New entrants to covered positions are required to file within 30 days of their entrance on duty. Employees are required to file the form each year regardless of whether any change in financial condition has occurred. In submitting Form HUD844, employees should use additional pages to explain any financial interests which are not selfÄexplanatory.

 August 1989 Ä2

Employees in the following job titles and series will be required to filp Fnrm HUDÄR44:
- o Auditor (511)
- o Investigator (1811)
- o Management Analyst (343)
- o Program Analyst (345)
- o Computer Specialist (334)
- Ä o Personnel Security Specialist (0080)
- o Appraisal/Construction Specialist (1101)

All forms will be submitted to the appropriate reviewing official (see below) in a sealed envelope marked "Standards of Conduct: Confidential" with the employee's name typed or written in the lower leftÄhand corner. The reviewing official will review the form, sign the lower rightÄhand corner, and provided no conflicts are disclosed,
    * reseal the envelope and forward it to the Director, Security Staff, Headquarters Office of Investigation, Room 8270, who is the custodian of the forms (this will ensure each individual's privacy; see Paragraph 2Ä5). For those instances where a conflict of interest appears to exist, see Paragraph 2Ä3.

a. Field Office Employees Ä Office of Audit (including Headquarters Audit Operations).
(1) Grade 13 and below. Submit the Form HUDÄ844 toÄthe Regional Inspector General for Audit (RIGA) or Director, Headquarters Audit Operations, for review.
(2) Grade 14. Submit the Form HUDÄ844 to the Deputy Assistant Inspector General (DAIG) for Audit Operations in Headquarters for review.
(3) RIGA's/Director, Headquarters Audit Operations. Submit the Form HUDÄ844 to the Assistant Inspector General for Audit (AIGA) for review.

b. Field Office Employees Ä Office of Investigation.
(1) Grade 13 and below. Submit the Form HUDÄ844 to the Deputy Assistant Inspector General for Investigation (DAIGI), Field Operations, in Headquarters for review.
(2) RIGI's and all Grade 14's. Assistant Inspector General Headquarters for review.
Submit the Form HUDÄ844 to the for Investigation (AIGI) in
August 1989

|OIGM Chapter 1083 | < 1
, X

c. Headquarters Audit.
(1) Grade 14 and below. Submit the Form HUDÄ844 to the appropriate DAIG for review.
(2) Grade 15. Submit the Form HUDÄ844 to the AIGA for review.
d. Headquarters Investigation.
(1) Grade 14 and below. Submit the Form HUDÄ844 to the AIGI for review.
(2) Grade 15. Submit the Form HUDÄ844 to the Deputy Inspector General (DIG) for review.
e. Fraud Control and Management Operations (FCMO).
(1) Grade 14 and below. Submit the Form HUDÄ844 to the AIG for FCMO for review.
(2) Grade 15. Submit the Form HUDÄ844 to the DIG for review.
2Ä3. CONFLICT OF INTEREST. If a reviewing official discovers what appears to be a conflict of interest in an employee's financial disclosure statement, the official will discuss the matter with the employee to determine whether a conflict actually exists and to resolve the situation, if possible. Decisions will be documented and a copy of the resolution and the Form HUDÄ844 will be sent to the appropriate AIG and/or the DIG. Situations that cannot be resolved will be broughtÄto the attention of the AIG and/or the DIG, who will confer with HUD's Office of the Assistant General Counsel for Administrative Law for a determination on the possible conflict of interest.
* 2Ä4. REVIEW OF FORMS HUDÄ844. In performing the review, the reviewing official should become thoroughly familiar with Appendix 1 which contains the HUD Standards of Conduct Regulations. The following guidelines will also apply to the review:
a. Ensure each item on the form is completed, and the form is signed and dated by the employee.
b. Reported employment should already have been approved in accordance with Paragraph 2Ä6 of this Manual Chapter. If this is not the case, a request for approval of outside employment should be processed immediately.
c. You need not "audit" the form to verify whether the disclosures are correct. Disclosures are to be taken at face value unless there appears to be a significant omission or ambiguity, or you have independent knowledge of matters outside the report.
        August 1989 ~4~

| | OIGM Chapter 10 i

d. Where information regarding an activity or interest is insufficient to make a judgment as to its potentially being a conflict, ask the employee for further information to help make the determination.

e. Remember to sign each form in the lower rightÄhand corner to evidence your review, before forwarding it in a sealed envelope to the Director of Security by September 30 as outlined in Paragra'ph ?Ä2.

f. The forms and their content are to remain confidential to protect employee privacy, except where it is necessary to discuss filings with a high level official such as the RIG, AIG or Deputy IG, as appropriate, in order to resolve potential conflicts. No copies of the form should be made.

9. This responsibility may not be delegated by the designated reviewinq offf cial, unless written permission is obtained from the Inspector General.

2Ä5. MAINTENANCE OF FORMS HUDÄ844. After review of all forms and resolution of any potential conflicts, all financial disclosure forms will be forwarded to the Director, Security Staff, Headquarters Office of Investigation (Room 8270). The Director will, by means of a checklist provided by the AIG's, ensure that all employees required to file a form have done so. The Director will maintain the forms for each employee, and will file them in a secure, locked cabinet to ensure their confidentiality. Forms will be retained for 6 years in accordance with the'General Services Administrationes Records Retention Schedule.

2Ä6. OUTSIDE EMPLOYMENT. Government employees may not engage in outside employment or activities that conflict with the duties and responsibilities of Federal employment (see Appendix 1). In order to assure that any outside employment in which OIG employees may engage is compatible with the employees' present duties and responsibilities, all OIG employees are required to notify the Inspector General through their supervisors of the nature of their outside employment. This is to be done initially and each time the employment status changes.

a. Procedures. Employees should process requests for approval by 'memorandum (using the format shown in Appendix 2) through their supervisors before engaging in any outside employment. The supervisor will forward the request to the appropriate AIG.

August 1989

It is the responsibility of the AIG to: (1) obtain the advice of the Assistant General Counsel for Inspector General and Administrative Proceedings if there is any doubt about the propriety of the outside employment; (2) prepare a memorandum of response for the IG's signature as shown in Appendix 3; and (3) if the outside employment is approved, provide a copy of both the employee's request and the IG's response memorandum to the Administrative Officer (AO). The AO will enter the approval in the automated personnel records.

Employment status changes as well as terminations of employment should be processed in the same manner as requests for approval.

b. Preparation of Income Tax Returns. OIG employees may prepare income tax returns for others for a fee provided that no violation of the Department's Standards of Conduct regulations will result te.g., such a violation would be any conflictÄofÄinterest situation, i.e., the preparation of a tax return for someone who has business dealings with the Department or who is regulated by the Department, either directly or indirectly). All work related to preparing income tax returns must be done outside of normal business hours. In all cases, there must be no consultations or other dealings with Internal Revenue Service representatives on behalf of the taxpayer whom the employee assisted. Representation before the IRS is Prohibited by 18 U.S.C. Sections 203 and 205.

c. Use of Employee's Title/Reference to Government Employment. OIG employees must obtain the prior approval of the Inspector General before usin3 their titles or reference to their government employment or experience in connection with a commercial enterprise. The line "Brief Description of Outside Employment" should be used to describe the employee's proposed use of his/her title or reference to government employment. The format shown in Appendix 2 will be used for this purpose.

SECTION 3. PERFORMING AUDITS AND INVESTIGATIONS

3Ä1. GENERAL. Although professional standards for conducting audits and investigations are not specifically covered in the Department's Standards of Conduct, OIG employees must maintain high standards and must be alert to any situations that could impair the performance of a successful audit or investigation.

3Ä2. UNDUE INFLUENCE IN AUDITS AND INVESTIGATIONS. All OIG staff are required to report instances of suspected undue influence or improper action adversely affecting the audit or investigative process. Normally, it is expected that these reports will be made through the chain of command, starting at the next level of supervision above where the incident is suspected to have occurred. However, if necÄessary,

August 1989

individuals are authorized to communicate directly with AIG's, the Deputy IG, or the Inspector General concerning suspected incidents of this tYPe.
Receipt of such a report must be brought to the personal attention of the appropriate AIG (or the Deputy IG and Inspector General as necessary) who will immediately begin an inquiry into the circumstances of the incident. A written report will be prepared and submitted to the Deputy IG or IG for each incident, with appropriate findings and
rPrnmmPncl?~tinnS
Employees who believe they have knowledge of such incidents are reminded of their duty to report them immediately in order to protect the credibility of the audit and investigative process and the integrity of the OIG.
SECTION 4. PROFESSIONAL RELATIONSHIPS
ANn PFRSnNAI CnNnilCT
4Ä1. GENERAL. In carrying out their daily job requirements, OIG employees must ensure that they adhere to the Standards of Conduct that apply not only to their individual job responsibilities, but also to professional relationships with other OIG and HUD employees and other departments and agencies, organizations and the public, and personal conduct.
4Ä2. RELATIONSHIPS WITH OTHER AGENCIES. Experience has demonstrated the value of maintaining a friendly, cooperative relationship with Federal, State, and local law enforcement and auditing organizations. Employees are expected to establish a cooperative relationship with the responsible officials of law enforcement and auditing agencies within the locations to which they are assigned. Should a serious instance arise where an official of a Federal, State, or local organization is uncooperative, the employee's supervisor will work to resolve the situation. The facts involved, including the identity of the official and attendant circumstances, shall be reported by memorandum to the Inspector General for his/her information.
4Ä3. REPORTS AND INFORMATION. The Standards of Conduct regulations, HUD Handbook 2000.3 REVÄ3, Office of Inspector General Activities, and OIG Manual Chapter 2}10, Audit Working Papers, advise OIG employees that all information obtained through official investigations and audits is not to be communicated to anyone except authorized or entitled individuals. Employees shall not accumulate copies of official documents for the purpose of retaining such material for their personal use, nor shall any person use for personal purposes any official documents acquired by virtue of their employment.
4~
   Ä7Ä   August 1989

|OIGM Chapte + | |
a. Safeguarding Information. Personnel shall take every precaution to prevent unauthorized persons from reading official material or overhearing discussions about official business. Do not leave offices unattended at any time during the working day unless proper security is placed over documents and materials in the office. Do not discuss official business with coÄworkers or others not directly involved with a particular assignment. During official discussions, make sure those who have no need to know the details cannot overhear your conversation.
b. Requests for Audit or Investigative Information. Individuals who inquire concerning official matters which are being audited or investigated shall be courteously informed that the subject matter is under review and that a report will be made to the official or agency charged with making the determination as to the action, if any, to be taken. An appropriate memorandum shall be prepared for the file concerning these inquiries. Where appropriate, individuals may be referred to the HUD Privacy Act or Freedom of Information Act officers for assistance.
c. Reporting and Responding to Contacts with the News Media. OIG employees below the Deputy AIG or Regional Inspector General (RIG) level shouÄld not discuss audits, investigations, or hotline complaints with media persons, but should courteously refer such persons to the appropriate AIG or RIG. Advise the AIG or RIG of the: (1) name of the reporter; (2) newspaper or station the reporter represents; and (3) nature of the information requested. Further instructions on reporting and responding to contacts with the news media may be found in OIG Manual Chapter 1130, Freedom of Information Act Requests and News Media Contacts.
d. Premature Disclosure of Budget Information and Related Data. OIG employees are reminded that the disclosure of information related to the Department's budget estimates, before the Office of Management and Budget and the President have reached their decisions about it, is a clear breach of Executive and Congressional policy. HUD Handbook 1800.2 REVÄ1, Restrictions on Disclosure of Budget Estimates and Related Data, sets forth the policies in this regard.
4Ä4. TESTIFYING IN OFFICIAL PROCEEDINGS. On occasion, it will be necessary for an OIG employee to appear as a government witness where testimony may be an essential element in the proof of a violation. The conduct and demeanor of an employee during these proceedings has a distinct relationship to the impact of the testimony.Ä Some helpful suggestions
are listed below:
August 1989

a. Testimony must be truthful and given in a clear and concise manner so that attorneys, judge, jury or hearing officials will not have difficulty in hearing and understanding the witness. In court proceedings, the witness should speak to the jury rather than address remarks to the questioning attorney. If asked a question by the court, face the judge when giving an answer. It is advisable to reflect upon a question before answering. When an objection is raised, a response to the question asked should not be made until the objection is ruled upon by the court.

b. Appearance. Employees should be dressed neatly and in a businesslike manner for court and official hearings.

c. Preparation. Employees scheduled to testify should be thoroughly familiar with the facts of their testimony. Before any proceedings, employees should discuss with the United States Attorney or the Department Counselor, the aspects of the proceedings.

d. Behavior. The behavior of the witness should be characterized by appropriate dignity. The witness should not appearÄtoo zealous or act in any way that would detract from the favorable impression he or she leaves with the court, jury, or hearing officials. In testifying, the witness should respond during both direct testimony snd er-<< examination in a calm and deliberate manner.

e. Oath. When the oath is administered in court, the witness should stand erect and answer in a clear voice. On assuming the witness chair, the witness should maintain a comfortable, wellÄbalanced position.

f. Notes. To refresh the memory of the witness and to aid in recalling past events, it is permissible to use notes in giving testimony, but it should be remembered that the notes used may be examined by the defense attorney.

4Ä5. PERSONAL CONDUCT. The OIG is judged by the official actions and conduct of all its employees in performing their responsibilities as representatives of the Department. OIG personnel should always be courteous, unbiased, and objective; they should avoid any tendency to be officious or domineering; and they should take care to avoid discriminatinq against any individual or group.

a. Basic Principle. OIG personnel are expected to conduct their business with efficiency. Fairness and objectivity should be employed, and courtesy and cooperation must be extended to public officials and HUD employees to the greatest extent possible.

b. Complaints. OIG personnel are required to immediately report complaints or allegations against OIG employees which come to their attention.

    Ä9Ä   August 1989

(1) Reporting Complaints. Complaints or allegations concerning t e attitude or conduct of any OIG employee are to be reported immediately in writing through proper channels to the appropriate AIG. If the subject of the complaint is part of the chain of command, then the complaint should be reported directly to the AIG. Failure to properly report known complaints or allegations may result in disciplinary action.
(2)
Resolving Complaints. Complaints or allegations concerning the attitude or conduct of any OIG employee must be resolved promptly at a level (e.g., RIG, AIG, and, when required, Deputy IG) that will ensure fair and objective action. The employee will be given an opportunity to explain his/her actions or positions in the matter. All information and pertinent circumstances concerning the complaint will be considered and appropriate administrative action will be taken if it is found that there has been improper conduct. The extent of such action will be governed by the nature of the improper conduct.
(3) Personal Relationships. If OIG employees at any time find that their duties may involve them in dealings with relatives, former business associates, personal friends, or their own former business or work, it is incumbent upon them to immediately notify their supervisors so that appropriate consideration may be given to transferring the assignment.
c. Other Areas of Concern. The following matters are not all inclusive but represent some of the other more important areas oÄf the Standards of Conduct.
(1) Intoxicants and Drugs. Any abuse of intoxicants or drugs by OIG personnel which may bring discredit to the organization or interfere with one's performance of official duties is strictly prohibited. Anyone having a problem in this regard should seek assistance from the Employee Assistance Program Staff in the Headquarters Office of Personnel. or the Regional Personnel Officer.
(2) Gambling, Betting, and Lotteries. Participating in any gambling activity including conducting a lottery or pool on a game for money or property, or in selling or purchasing a number slip or ticket is prohibited while on governmentÄowned or Äleased proPertv.
(3) Indebtedness. Financial obligations shall be paid in a proper and timely manner.
    August 1989 Ä10

(4) Personal Appearance. Employees should be dressed neatly and in a businesslike manner that is considerate of coÄworkers and suitable for a government office.

(5) Time and Attendance. Employees are required to strictly adhere to the official duty hours of their respective organizations. EmployeesÄwill be required to sign for annual leave as a result of unauthorized late arrivals or early deDartures to/from the work site.

Official working hours can only be used to conduct official duties related to the employee's current position or other preapproved activities. It is the responsibility of the supervisor or manager to direct all aspects of the use of the employee's official time. Therefore, if an employee is not performing official duties during the official duty hours, the supervisor or manager must charge the employee annual leave, leave without pay, or absence without leave for the time spent conducting personal business.

4Ä6. USE OF OIG CREDENTIALS. OIG credentials shall be used in the conduct of official business only. They shall not be used to obtain special favors (e.g., as identification for cashing checks) nor should they be used to obtain information that does not relate to authorized OIG activities. OIG employees, on official business, should identify themselves promptly and display their credentials when appropriate. Take care to avoid creating an impression that you represent any government agency other than HUD. Further instructions on the safeguarding and use of credentials may be found in OIG Manual Chapter 1081, Personnel Administration: OIG Credentials.

4Ä7. POLITICAL ACTIVITIES. The Hatch Act provides that, generally, Federal employees must not actively participate in partisan campaigns and elections. They are also prohibited from taking an active part in partisan political management. A partisan election is one in which any candidate is running as a representative of a political party whose presidential candidate received electoral votes in the last presidential election. Employees covered by the Hatch Act may not,
among other things:

a. Be a candidate for office in a partisan election;
b. Serve as an officer of a political party or club; serve as an officer or member of a committee of a political party or club;
c. Solicit, receive, handle, otherwise account for, or disburse political contributions;
d. Solicit votes for or against a candidate;

    Ä11Ä    August 1989

DIGM Ch:pter I083 | 1

e. Endorse or oppose a candidate in a political advertisement, broadcast, or campaign literature;
f. Serve as a delegate or alternate to a political convention; or
9. Address a convention, rally, or similar gathering of a political party in support of or in opposition to a partisan candidate for public office.
Restrictions regarding the political activity of Federal employees are contained in 5 U.S.C. 7321Ä7327 and 18 U.S.C. 602, 603 and 607. Regulations implementing these restrictions are set forth in 5 CFR P^rt 7RS
Ä12
August 1989