**EXHIBIT 2**



| **EEOC** | DIRECTIVES TRANSMITTAL | **Number** |
|---|---|---|
| | | **915.003** |
| | | **Date** |
| | | **5/20/98** |

**SUBJECT:**   EEOC COMPLIANCE MANUAL

**PURPOSE:**   This transmittal covers the issuance of Section 8 of the new Compliance Manual on "Retaliation". The section provides guidance and instructions for investigating and analyzing claims of retaliation under the statutes enforced by the EEOC.

**EFFECTIVE
DATE:**   Upon receipt

**DISTRIBUTION:**   EEOC Compliance Manual holders

**OBSOLETE
DATA:**   Section 614 of Compliance Manual, Volume 2

**FILING
INSTRUCTIONS:**   This is the first section issued as part of the new Compliance Manual. Section 614 of the existing Compliance Manual should be discarded.

_____/s/_____
Paul M. Igasaki
Chairman

915.003                                                                                                      5/98

SECTION 8:  RETALIATION
TABLE OF CONTENTS

**CHARGE-PROCESSING OUTLINE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **iii**

**8-I. INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-1**
    **A.**    **OVERVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-1**
    **B.**    **BASIS FOR FILING A CHARGE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-2**

**8-II. ELEMENTS OF A RETALIATION CLAIM** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-3**
    **A.**    **OVERVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-3**
    **B.**    **PROTECTED ACTIVITY:  OPPOSITION** . . . . . . . . . . . . . . . . . . . . . . . **8-3**
        **1.**    **Definition** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-3**
        **2.**    **Examples of Opposition** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-4**
        **3.**    **Standards Governing Application of the Opposition Clause** . . . . . . . **8-7**
            **a.**    **Manner of Opposition Must Be Reasonable** . . . . . . . . . . . . . . **8-7**
            **b.**    **Opposition Need Only Be Based on Reasonable and Good**
                  **Faith Belief** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-8**
            **c.**    **Person Claiming Retaliation Need Not Be the Person Who**
                  **Engaged in Opposition** . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-9**
            **d.**    **Practices Opposed Need Not Have Been Engaged in by the**
                  **Named Respondent** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-9**
    **C.**    **PROTECTED ACTIVITY:  PARTICIPATION** . . . . . . . . . . . . . . . . . . . **8-9**
        **1.**    **Definition** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-9**
        **2.**    **Participation Is Protected Regardless of Whether the Allegations**
            **in the Original Charge Were Valid or Reasonable** . . . . . . . . . . . . . . **8-9**
        **3.**    **Person Claiming Retaliation Need Not Be the Person Who**
            **Engaged in Participation** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-10**
        **4.**    **The Practices Challenged in Prior or Pending Statutory Proceedings**
            **Need Not Have Been Engaged in by the Named Respondent** . . . . . . **8-10**
    **D.**    **ADVERSE ACTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-11**
        **1.**    **General Types of Adverse Actions** . . . . . . . . . . . . . . . . . . . . . **8-11**
        **2.**    **Adverse Actions Can Occur After the Employment Relationship**
            **Between the Charging Party and Respondent Has Ended** . . . . . . . . **8-12**
        **3.**    **Adverse Actions Need Not Qualify as "Ultimate Employment**
            **Action" or Materially Affect the Terms or Conditions of**
            **Employment to Constitute Retaliation** . . . . . . . . . . . . . . . . . . . **8-13**
    **E.**    **PROOF OF CAUSAL CONNECTION** . . . . . . . . . . . . . . . . . . . . . . . . **8-15**
        **1.**    **Direct Evidence** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-16**
        **2.**    **Circumstantial Evidence** . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-17**

**8-III.**  **SPECIAL REMEDIES ISSUES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8-20**
    **A.**    **TEMPORARY OR PRELIMINARY RELIEF** . . . . . . . . . . . . . . . . . . . **8-20**
    **B.**    **COMPENSATORY AND PUNITIVE DAMAGES** . . . . . . . . . . . . . . . . . **8-21**
        **1.**    **Availability of Damages for Retaliation Under ADEA and EPA** . . . **8-21**
        **2.**    **Appropriateness of Punitive Damages** . . . . . . . . . . . . . . . . . . . **8-21**

5/98                                                                                    915.003

# CHARGE-PROCESSING OUTLINE

In processing a charge involving an allegation of retaliation, consider the following issues (for a detailed discussion of each issue, see accompanying chapter at referenced pages):

---

**There are three essential elements of a retaliation claim:**

1) **protected activity -- opposition to discrimination or participation in the statutory complaint process**

2) **adverse action**

3) **causal connection between the protected activity and the adverse action**

---

## I.    Protected Activity

A.    **Did CP oppose discrimination?** ........................................................................ 3

1. Did the charging party (CP) explicitly or implicitly communicate to the respondent (R) or another covered entity a belief that its activity constituted unlawful discrimination under Title VII, the ADA, the ADEA, or the EPA?

   - If the protest was broad or ambiguous, would CP's protest reasonably have been interpreted as opposition to such unlawful discrimination?

   Did someone closely associated with CP oppose discrimination?

2. Was the manner of opposition reasonable? Was the manner of opposition so disruptive that it significantly interfered with R's legitimate business concerns?

   - If the manner of opposition was not reasonable, CP is not protected under the anti-retaliation clauses.

3. Did CP have a reasonable and good faith belief that the opposed practice violated the anti-discrimination laws?

   - If so, CP is protected against retaliation, even if s/he was mistaken about the unlawfulness of the challenged practices.

- If not, CP is not protected under the anti-retaliation clauses.

**B.    Did CP participate in the statutory complaint process?.................................... 9**

Did CP or someone closely associated with CP file a charge, or testify, assist, or participate in any manner in an investigation, proceeding, hearing, or lawsuit under the statutes enforced by the EEOC?

- If so, CP is protected against retaliation regardless of the validity or reasonableness of the original allegation of discrimination.

- CP is protected against retaliation by a respondent for participating in statutory complaint proceedings even if that complaint involved a different covered entity.

## II.    Adverse Action

**Did R subject CP to any kind of adverse treatment? ........................................ 11**

- Adverse actions undertaken after CP's employment relationship with R ended, such as negative job references,  can be challenged.

- Although trivial annoyances are not actionable, more significant retaliatory treatment that is reasonably likely to deter protected activity is unlawful. There is no requirement that the adverse action materially affect the terms, conditions, or privileges of employment.

## III.    Causal Connection

**A.    Is there direct evidence that retaliation was a motive for the adverse action?....................................................................................... 15**

1. Did R official admit that it undertook the adverse action because of the protected activity?

2. Did R official express bias against CP based on the protected activity?  If so, is there evidence linking that statement of bias to the adverse action?

   - Such a link would be established if, for example, the statement was made by the decision-maker at the time of the challenged action.

If there is direct evidence that retaliation was a motive for the adverse action, "cause" should be found. Evidence as to any additional legitimate motive would be relevant only to relief, under a mixed-motives analysis.

**B.     Is there circumstantial evidence that retaliation was the true reason for the adverse action?** ................................................................................. **16**

1.     Is there evidence raising an inference that retaliation was the cause of the adverse action?

-     Such an inference is raised if the adverse action took place shortly after the protected activity and if the decision-maker was aware of the protected activity before undertaking the adverse action.

-     If there was a long period of time between the protected activity and the adverse action, determine whether there is other evidence raising an inference that the cause of the adverse action was retaliation.

2.     Has R produced evidence of a legitimate, nondiscriminatory reason for the adverse action?

3.     Is R's explanation a pretext designed to hide retaliation?

-     Did R treat similarly situated employees who did not engage in protected activity differently from CP?

-     Did R subject CP to heightened scrutiny after s/he engaged in protected activity?

If, on the basis of all of the evidence, the investigator is persuaded that retaliation was the true reason for the adverse action, then "cause" should be found.

## IV.     Special Remedies Issues

**A.     Is it appropriate to seek temporary or preliminary relief pending final disposition of the charge?** ................................................................................. **19**

1.     Is there a substantial likelihood that the challenged action will be found to constitute unlawful retaliation?

2.     Will the retaliation cause irreparable harm to CP and/or the EEOC?

-    Will CP likely incur irreparable harm beyond financial hardship because of the retaliation?

-    If the retaliation appears to be based on CP's filing of a prior EEOC charge, will that retaliation likely cause irreparable harm to EEOC's ability to investigate CP's original charge of discrimination?

If there is a substantial likelihood that the challenged action will constitute retaliation and if that retaliation will cause irreparable harm to CP and/or the EEOC, contact the Regional Attorney about pursuing temporary or preliminary relief.

**B.    Are compensatory and punitive damages available and appropriate?.............** 20

Compensatory and punitive damages are available for retaliation claims under *all* of the statutes enforced by the EEOC, including the ADEA and the EPA.  Compensatory and punitive damages for retaliation claims under the ADEA and the EPA are not subject to statutory caps.

Punitive damages often are appropriate in retaliation claims under any of the statutes enforced by the EEOC.

# 8-I  INTRODUCTION

## A.    OVERVIEW

Title VII of the Civil Rights Act of 1964,[1] the Age Discrimination in Employment Act,[2] the Americans with Disabilities Act,[3] and the Equal Pay Act[4] prohibit retaliation by an employer, employment agency, or labor organization because an individual has engaged in protected activity.[5] Protected activity consists of the following:

---

### PROTECTED ACTIVITY

**(1)     opposing a practice made unlawful by one of the employment discrimination statutes (*the "opposition" clause*); or**

**(2)     filing a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under the applicable statute (*the "participation" clause*).**

---

This chapter reaffirms the Commission's policy of ensuring that individuals who oppose unlawful employment discrimination, participate in employment discrimination proceedings, or otherwise assert their rights under the laws enforced by the Commission are protected against retaliation.  Voluntary compliance with and effective enforcement of the anti-discrimination statutes depend in large part on the initiative of individuals to oppose employment practices that they reasonably believe to be unlawful, and to file charges of discrimination.  If retaliation for such

---

[1]  Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

[2]  Section 4(d) of the ADEA, 29 U.S.C. § 623(d).

[3]  Section 503(a) of the ADA, 42 U.S.C. § 12203(a). Section 503 (b) of the ADA, 42 U.S.C. 12203(b), further provides that it is unlawful "to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

[4]  Section 15(a)(3) of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 215(a)(3).

[5]  Federal employees are also protected against retaliation under each of the employment discrimination statutes.  *See, e.g., Hale v. Marsh*, 808 F.2d 616, 619 (7th Cir. 1986) (recognizing retaliation cause of action for federal employees under Title VII); *Bornholdt v. Brady*, 869 F.2d 57, 62 (2d Cir. 1989) (recognizing retaliation cause of action for federal employees under ADEA).

5/98 _____ 915.003

activities were permitted to go unremedied, it would have a chilling effect upon the willingness of individuals to speak out against employment discrimination or to participate in the EEOC's administrative process or other employment discrimination proceedings.

The Commission can sue for temporary or preliminary relief before completing its processing of a retaliation charge if the charging party or the Commission will likely suffer irreparable harm because of the retaliation. The investigator should contact the Regional Attorney early in the investigation if it appears that it may be appropriate to seek such relief. *See* Section 8-III A. for guidance on the standards for seeking temporary or preliminary relief.

## B.     BASIS FOR FILING A CHARGE

A charging party who alleges retaliation under Title VII, the ADA, the ADEA, or the EPA need not also allege that he was treated differently because of race, religion, sex, national origin, age, or disability.[6] A charging party who alleges retaliation in violation of the ADA need not be a qualified individual with a disability.[7] Similarly, a charging party who alleges retaliation for protesting discrimination against persons in the protected age group need not be in the protected age group in order to bring an ADEA claim.[8]

A charging party can challenge retaliation by a respondent even if the retaliation occurred after their employment relationship ended.[9] S/he can also challenge retaliation by a respondent based on his/her protected activity involving a different employer, or based on protected activity by someone closely related to or associated with the charging party.[10]

---

[6] Where it appears that a charging party's allegation of unlawful retaliation may also be subject to the jurisdiction of another federal agency or a state or local government, s/he should be referred promptly to the appropriate office. For example, if the charging party is covered by a collective bargaining agreement and is a member of the union, s/he should be referred to the NLRB to be counseled on unlawful retaliation under the National Labor Relations Act. Non-payment of overtime pay should be directed to the Department of Labor, Wage and Hour Division. The EEOC office should proceed with its investigation of allegations under its jurisdiction, and refer to any applicable memorandum of understanding or coordination rule with the agency that also has jurisdiction over the matter.

[7] *Krouse v. American Sterilizer*, 126 F.3d 494 (3d Cir. 1997).

[8] *Anderson v. Phillips Petroleum*, 722 F. Supp. 668, 671-72 (D. Kan. 1989).

[9] *See* Section 8-II D.

[10] *See* Sections 8-II B.3.c. and d. and 8-II C.3. and 4.

A charging party can bring an ADA retaliation claim against an individual supervisor, as well as an employer.  This is because Section 503(a) of the ADA makes it unlawful for a "person" to retaliate against an individual for engaging in protected activity.[11]

# 8-II.  ELEMENTS OF A RETALIATION CLAIM

## A.    OVERVIEW

There are three essential elements of a retaliation claim:

---

**ELEMENTS OF RETALIATION**

1)    **opposition to discrimination or participation in covered proceedings**

2)    **adverse action**

3)    **causal connection between the protected activity and the adverse action**

---

## B.    PROTECTED ACTIVITY:  OPPOSITION

### 1.    Definition

The anti-retaliation provisions make it unlawful to discriminate against an individual because s/he has opposed any practice made unlawful under the employment discrimination statutes.[12]  This protection applies if an individual explicitly or implicitly communicates to his or her employer or other covered entity a belief that its activity constitutes a form of employment discrimination that is covered by any of the statutes enforced by the EEOC.

---

[11]    *Ostrach v. Regents of University of California*, 957 F. Supp. 196 (E.D. Ca. 1997) (individual can be sued for retaliation under section 503 of ADA).

[12]    The anti-retaliation provision of the Fair Labor Standards Act, which applies to the Equal Pay Act, does not contain a specific "opposition" clause.  However, courts have recognized that the statute prohibits retaliation based on opposition to allegedly unlawful practices.  *See, e.g., EEOC v. Romeo Community Sch.*, 976 F.2d 985, 989-90 (6th Cir. 1992);  *EEOC v. White & Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989).  *Contra Lambert v. Genessee Hospital*, 10 F.3d 46, 55 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052 (1994).

While Title VII and the ADEA prohibit retaliation based on opposition to a practice made unlawful by those statutes, the ADA prohibits retaliation based on opposition to "any act or practice made unlawful by this chapter."  The referenced chapter prohibits not only disability-based employment discrimination, but also disability discrimination in state and local government services, public accommodations, commercial facilities, and telecommunications.  Thus, the ADA prohibits retaliation for opposing not just allegedly discriminatory employment practices but also practices made unlawful by the other titles of the statute.

### 2.    Examples of Opposition

- **Threatening to file a charge or other formal complaint alleging discrimination**

    Threatening to file a complaint with the Commission, a state fair employment practices agency, union, court, or any other entity that receives complaints relating to discrimination is a form of opposition.

> **Example** - CP tells her manager that if he fails to raise her salary to that of a male coworker who performs the same job, she will file a lawsuit under either the federal Equal Pay Act or under her state's parallel law.  This statement constitutes "opposition."

- **Complaining to anyone about alleged discrimination against oneself or others**

    A complaint or protest about alleged employment discrimination to a manager, union official, co-worker, company EEO official, attorney, newspaper reporter, Congressperson, or anyone else constitutes opposition.   Opposition may be nonverbal, such as picketing or engaging in a production slow-down.  Furthermore, a complaint on behalf of another, or by an employee's representative, rather than by the employee herself, constitutes protected opposition by both the person who makes the complaint and the person on behalf of whom the complaint is made.

    A complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination.[13]   Because individuals often may not know the specific

---

[13] *See, e.g., Barber v. CSX Distrib. Services,* 68 F.3d 694 (3d Cir. 1995) (plaintiff's letter to defendant's human resources department complaining about unfair treatment and expressing (continued...)

requirements of the anti-discrimination laws enforced by the EEOC, they may make broad or ambiguous complaints of unfair treatment. Such a protest is protected opposition if the complaint would reasonably have been interpreted as opposition to employment discrimination.

> **Example 1 -** CP calls the President of R's parent company to protest religious discrimination by R.  CP's protest constitutes "opposition."
>
> **Example 2 -** CP complains to co-workers about harassment of a disabled employee by a supervisor.   This complaint constitutes "opposition."
>
> **Example 3 -** CP complains to her foreman about graffiti in her workplace that is derogatory toward women.  Although CP does not specify that she believes the graffiti creates a hostile work environment based on sex, her complaint reasonably would have been interpreted by the foreman as opposition to sex discrimination, due to the sex-based content of the graffiti.  Her complaint therefore constitutes "opposition."
>
> **Example 4 -** CP (African-American) requests a wage increase from R, arguing that he deserves to get paid a higher salary.  He does not state or suggest a belief that he is being subjected to wage discrimination based on race.  There also is no basis to conclude that R would reasonably have interpreted his complaint as opposition to race discrimination because the challenged unfairness could have been based on any of several reasons. CP's protest therefore does not constitute protected "opposition."

- **Refusing to obey an order because of a reasonable belief that it is discriminatory**

    Refusal to obey an order constitutes protected opposition if the individual reasonably believes that the order requires him or her to carry out unlawful employment discrimination.

---

[13](...continued)
dissatisfaction that job he sought went to a less qualified individual did not constitute ADEA opposition because letter did not explicitly or implicitly allege that age was reason for alleged unfairness).

> **Example** - CP works for an employment agency. His manager instructs him not to refer any African-Americans to a particular client, based on the client's request. CP refuses to obey the order and refers an African-American applicant to that client. CP's action constitutes "opposition."

Refusal to obey an order also constitutes protected opposition if the individual reasonably believes that the order makes discrimination a term or condition of employment. For example, in one case a court recognized that a correction officer's refusal to cooperate with the defendant's practice of allowing white but not black inmates to shower after work shifts constituted protected opposition. Even if the inmates were not "employees," the plaintiff could show that his enforcement of the policy made race discrimination a term or condition of his employment. Thus, his refusal to obey the order constituted opposition to an unlawful employment practice.[14]

● **Requesting reasonable accommodation or religious accommodation**

A request for reasonable accommodation of a disability constitutes protected activity under Section 503 of the ADA. Although a person making such a request might not literally "oppose" discrimination or "participate" in the administrative or judicial complaint process, s/he is protected against retaliation for making the request. As one court stated,

> It would seem anomalous . . . to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge. This would leave employees unprotected if an employer granted the accommodation and shortly thereafter terminated the employee in retaliation.[15]

By the same rationale, persons requesting religious accommodation under Title VII are protected against retaliation for making such requests.

---

[14] *Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994), *cert. denied*, 513 U.S. 1081 (1995).

[15] *Soileau v. Guilford of Maine*, 105 F.3d 12, 16 (1st Cir. 1997). *See also Garza v. Abbott Laboratories*, 940 F. Supp. 1227, 1294 (N.D. Ill. 1996) (plaintiff engaged in statutorily protected expression by requesting accommodation for her disability). The courts in *Soileau* and *Garza* only considered whether accommodation requests fall within the opposition or participation clause in Section 503(a) of the ADA. Note, however, that Section 503(b) more broadly makes it unlawful to interfere with "the exercise or enjoyment of . . . any right granted or protected" by the statute.

### 3.    Standards Governing Application of the Opposition Clause

Although the opposition clause in each of the EEO statutes is broad, it does not protect every protest against job discrimination.  The following principles apply:

### a.    Manner of Opposition Must Be Reasonable

The manner in which an individual protests perceived employment discrimination must be reasonable in order for the anti-retaliation provisions to apply.  In applying a "reasonableness" standard, courts and the Commission balance the right of individuals to oppose employment discrimination and the public's interest in enforcement of the EEO laws against an employer's need for a stable and productive work environment.

Public criticism of alleged discrimination may be a reasonable form of opposition.  Courts have protected an employee's right to inform an employer's customers about the employer's alleged discrimination, as well as the right to engage in peaceful picketing to oppose allegedly discriminatory employment practices.[16]

On the other hand, courts have found that the following activities were not reasonable and thus not protected: searching and photocopying confidential documents relating to alleged ADEA discrimination and showing them to co-workers;[17] making an overwhelming number of complaints based on unsupported allegations and bypassing the chain of command in bringing the complaints;[18] and badgering a subordinate employee to give a witness statement in support of an EEOC charge and attempting to coerce her to change her statement.[19]   Similarly, unlawful activities, such as acts or threats of violence to life or property, are not protected.

If an employee's protests against allegedly discriminatory employment practices interfere with job performance to the extent that they render him or her ineffective in the job, the retaliation

---

[16]  *See, e.g., Sumner v. United States Postal Service*, 899 F.2d 203 (2d Cir. 1990) (practices protected by opposition clause include writing letters to customers criticizing employer's alleged discrimination).

[17]  *O'Day v. McDonnell Douglas Helicopter* Co., 79 F.3d 756 (9th Cir. 1996).

[18]  *Rollins v. Florida Dep't of Law Enforcement*, 868 F.2d 397 (11th Cir. 1989).

[19]  *Jackson v. St. Joseph State Hospital*, 840 F.2d 1387 (8th Cir.), *cert. denied*, 488 U.S. 892 (1988).

provisions do not immunize the worker from appropriate discipline or discharge.[20]  Opposition to perceived discrimination does not serve as license for the employee to neglect job duties.

### b.    Opposition Need Only Be Based on Reasonable and Good Faith Belief

A person is protected against retaliation for opposing perceived discrimination if s/he had a reasonable and good faith belief that the opposed practices were unlawful.  Thus, it is well settled that a violation of the retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful.[21]  As one court has stated, requiring a finding of actual illegality would "undermine[] Title VII's central purpose, the elimination of employment discrimination by informal means; destroy[] one of the chief means of achieving that purpose, the frank and non-disruptive exchange of ideas between employers and employees; and serve[] no redeeming statutory or policy purposes of its own."[22]

> **Example 1** - CP complains to her office manager that her supervisor failed to promote her because of her gender.   (She believes that sex discrimination occurred because she was qualified for the promotion and the supervisor promoted a male instead.)  CP has engaged in protected opposition regardless of whether the promotion decision was in fact discriminatory because she had a reasonable and good faith belief that discrimination occurred.
>
> **Example 2 -**  Same as above, except the job sought by CP was in accounting and required a CPA license, which CP lacked and the selectee had.  CP knew that it was necessary to have a CPA license to perform this job.  CP has not engaged in protected opposition because she did not have a reasonable and good faith belief that she was rejected because of sex discrimination

---

[20] *See, e.g., Coutu v. Martin County Bd. of Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995) (no retaliation found where plaintiff was criticized by her supervisor not because she was opposing discrimination but because she was spending an inordinate amount of time in "employee advocacy" activities and was not completing other aspects of her personnel job).

[21] This standard has been adopted by every circuit that has considered the issue.  *See, e.g., Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997), and *Trent v. Valley Electric Association, Inc.*, 41 F.3d 524, 526 (9th Cir. 1994).

[22] *Berg v. La Crosse Cooler Co.*, 612 F.2d 1041, 1045 (7th Cir. 1980).

915.003                                                                                                5/98

### c.    Person Claiming Retaliation Need Not Be the Person Who Engaged in Opposition

Title VII, the ADEA, the EPA, and the ADA prohibit retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage that person from pursuing those rights.[23]  For example, it is unlawful to retaliate against an employee because his son, who is also an employee, opposed allegedly unlawful employment practices. Retaliation against a close relative of an individual who opposed discrimination can be challenged by both the individual who engaged in protected activity and the relative, where both are employees. See Section 8-II C.3. for discussion of similar principle under "participation" clause.

### d.    Practices Opposed Need Not Have Been Engaged in by the Named Respondent

There is no requirement that the entity charged with retaliation be the same as the entity whose allegedly discriminatory practices were opposed by the charging party.  For example, a violation would be found if a respondent refused to hire the charging party because it was aware that she opposed her previous employer's allegedly discriminatory practices.

## C.    PROTECTED ACTIVITY:  PARTICIPATION

### 1.    Definition

The anti-retaliation provisions make it unlawful to discriminate against any individual because s/he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, hearing, or litigation under Title VII, the ADEA, the EPA, or the ADA. This protection applies to individuals challenging employment discrimination under the statutes enforced by EEOC in EEOC proceedings, in state administrative or court proceedings, as well as in federal court proceedings, and to individuals who testify or otherwise participate in such proceedings.[24]  Protection

---

[23] *See, e.g., Murphy v. Cadillac Rubber & Plastics, Inc.*, 946 F. Supp. 1108, 1118 (W.D. N.Y. 1996) (plaintiff stated claim of retaliation where he was subjected to adverse action based on his wife's protected activities).

[24] The participation clause protects those who testify in an employment discrimination case about their own discriminatory conduct, even if such testimony is involuntary.  For example, in *Merritt v. Dillard Paper Co.*, 120 F.3d 1181 (11th Cir.1997), the defendant fired the plaintiff after he reluctantly testified in his co-worker's Title VII case about workplace sexual activities in which he participated.  The president of the defendant company told the plaintiff at the time of his termination that his testimony was "the most damning" to the defendant's case.  The court found that this comment constituted direct evidence of retaliation.

5/98                                                                                                    915.003

under the participation clause extends to those who file untimely charges. In the federal sector, once a federal employee initiates contact with an EEO counselor, (s)he is engaging in "participation."[25]

### 2. Participation Is Protected Regardless of Whether the Allegations in the Original Charge Were Valid or Reasonable

The anti-discrimination statutes do not limit or condition in any way the protection against retaliation for participating in the charge process. While the opposition clause applies only to those who protest practices that they reasonably and in good faith believe are unlawful, the participation clause applies to *all* individuals who participate in the statutory complaint process. Thus, courts have consistently held that a respondent is liable for retaliating against an individual for filing an EEOC charge regardless of the validity or reasonableness of the charge.[26] To permit an employer to retaliate against a charging party based on its unilateral determination that the charge was unreasonable or otherwise unjustified would chill the rights of all individuals protected by the anti-discrimination statutes.

### 3. Person Claiming Retaliation Need Not Be the Person Who Engaged in Participation

The retaliation provisions of Title VII, the ADEA, the EPA, and the ADA prohibit retaliation against someone so closely related to or associated with the person exercising his or her statutory rights that it would discourage or prevent the person from pursuing those rights. For example, it would be unlawful for a respondent to retaliate against an employee because his or her spouse, who is also an employee, filed an EEOC charge.[27] Both spouses, in such circumstances, could bring retaliation claims.

---

[25] *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997).

[26] *See, e.g., Wyatt v. Boston*, 35 F.3d 13, 15 (1st Cir. 1994).

[27] *See, e.g., EEOC v. Ohio Edison Co.*, 7 F.3d 541, 544 (6th Cir. 1993) (agreeing that plaintiff's allegation of reprisal for relative's protected activities states claim under Title VII); *Thurman v. Robertshaw Control Co.*, 869 F. Supp. 934, 941 (N.D. Ga. 1994) (plaintiff could make out first element of *prima facie* case of retaliation by showing that plaintiff's close relative participated in the complaint process).

The Commission disagrees with the Fifth Circuit's holding in *Holt v. JTM Indus.*, 89 F.3d 1224 (5th Cir. 1996), *cert. denied*, 117 S.Ct. 1821 (1997), that there was no unlawful retaliation where the plaintiff was put on paid administrative leave because his wife had filed an age discrimination charge.

### 4. The Practices Challenged in Prior or Pending Statutory Proceedings Need Not Have Been Engaged in by the Named Respondent

An individual is protected against retaliation for participation in employment discrimination proceedings even if those proceedings involved a different entity.[28]  For example, a violation would be found if a respondent refused to hire the charging party because it was aware that she filed an EEOC charge against her former employer.

## D.    ADVERSE ACTION

### 1.    General Types of Adverse Actions

The most obvious types of retaliation are denial of promotion, refusal to hire, denial of job benefits, demotion, suspension, and discharge.  Other types of adverse actions include threats, reprimands, negative evaluations, harassment, or other adverse treatment.

Suspending or limiting access to an internal grievance procedure also constitutes an "adverse action."  For example, in *EEOC v. Board of Governors of State Colleges & Universities*,[29] a university's collective bargaining agreement provided for a specific internal grievance procedure leading to arbitration.  The agreement further provided that this procedure could be terminated if the employee sought resolution in any other forum, such as the EEOC.  The Seventh Circuit ruled that termination of the grievance process constituted an adverse employment action in violation of the anti-retaliation clause of the ADEA.[30]

---

[28]  *See*, e.g., *Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 873-74 (6th Cir.) (defendant's frequent reference to plaintiff's sex discrimination action against prior employer warranted inference that defendant's refusal to hire was retaliatory), *cert. denied*, 502 U.S. 1013 (1991).

[29]  957 F.2d 424 (7th Cir.), *cert. denied*, 506 U.S. 906 (1992).

[30]  *See also Johnson v. Palma*, 931 F.2d 203 (2d Cir. 1991) (union's refusal to proceed with plaintiff's grievance after he filed race discrimination complaint with state agency constituted unlawful retaliation).

### 2.     Adverse Actions Can Occur After the Employment Relationship Between the Charging Party and Respondent Has Ended

In *Robinson v. Shell Oil Company*,[31] the Supreme Court unanimously held that Title VII prohibits respondents from retaliating against former employees as well as current employees for participating in any proceeding under Title VII or opposing any practice made unlawful by that Act. The plaintiff in *Robinson* alleged that his former employer gave him a negative job reference in retaliation for his having filed an EEOC charge against it.  Some courts previously had held that former employees could not challenge retaliation that occurred after their employment had ended because Title VII, the ADEA, and the EPA prohibit retaliation against "any employee."[32]  However, the Supreme Court stated that coverage of post-employment retaliation is more consistent with the broader context of the statute and with the statutory purpose of maintaining unfettered access to the statute's remedial mechanisms. The Court's holding applies to each of the statutes enforced by the EEOC because of the similar language and common purpose of the anti-retaliation provisions.

Examples of post-employment retaliation include actions that are designed to interfere with the individual's prospects for employment, such as giving an unjustified negative job reference, refusing to provide a job reference, and informing an individual's prospective employer about the individual's protected activity.[33]  However, a negative job reference about an individual who engaged in protected activity does not constitute unlawful retaliation unless the reference was based on a retaliatory motive.  The truthfulness of the information in the reference may serve as a defense unless there is proof of pretext, such as evidence that the former employer routinely declines to offer information about its former employees' job performance and violated that policy with regard to an individual who engaged in protected activity.  See Section 8-II E. below.

Retaliatory acts designed to interfere with an individual's prospects for employment are unlawful regardless of whether they cause a prospective employer to refrain from hiring the individual.[34]  As the Third Circuit  stated, "an employer who retaliates cannot escape liability merely

---

[31]  ___ U.S. ___, 117 S. Ct. 843 (1997).

[32]  The ADA, unlike the other anti-discrimination statutes, prohibits retaliation against "any individual" who has opposed discrimination based on disability or participated in the charge process. 42 U.S.C. § 12203.

[33]  *See, e.g., EEOC v. L. B. Foster*, 123 F.3d 746 (3d Cir. 1997), c*ert. denied,* 66 U.S. L.W. 3388 (U.S. March 2, 1998); *Ruedlinger v. Jarrett*, 106 F.3d 212 (7th Cir. 1997).

[34]  *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997).

because the retaliation falls short of its intended result."[35]  However, the fact that the reference did not affect the individual's job prospects may affect the relief that is due.

### 3.    Adverse Actions Need Not Qualify as "Ultimate Employment Actions" or Materially Affect the Terms or Conditions of Employment to Constitute Retaliation

Some courts have held that the retaliation provisions apply only to retaliation that takes the form of ultimate employment actions.[36]  Others have construed the provisions more broadly, but have required that the action materially affect the terms, conditions, or privileges of employment.[37]

The Commission disagrees with those decisions and concludes that such constructions are unduly restrictive.  The statutory retaliation clauses prohibit any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.  Of course, petty slights and trivial annoyances are not actionable, as they are not likely to deter protected activity.  More significant retaliatory treatment, however, can be challenged regardless of the level of harm.  As the Ninth Circuit has stated, the degree of harm suffered by the individual "goes to the issue of damages, not liability."[38]

---

[35] *EEOC v. L. B. Foster*, 123 F.3d at 754.

[36]  *See Ledergerber v. Stangler*, 122 F.3d 1142 (8th Cir. 1997) (reassignment of plaintiff's staff, with attendant loss of status, did not rise to level of ultimate employment decision to constitute actionable retaliation); *Mattern v. Eastman Kodak Co.,* 104 F.3d 702 (5th Cir.) (anti-retaliation provisions only bar "ultimate employment actions" that are retaliatory; harassment, reprimands, and poor evaluation could not be challenged), *cert. denied*, 118 S. Ct. 336 (1997).

[37]  *See, e.g., Munday v. Waste Management of North America*, 126 F.3d 239 (4th Cir. 1997) (employer's instruction to workers to shun plaintiff who had engaged in protected activity, to spy on her, and to report back to management whatever she said to them did not adversely affect plaintiff's terms, condition, or benefits of employment and therefore could not be challenged), *cert. denied*, 118 S. Ct. 1053 (1998).

[38]  *Hashimoto,* 118 F.3d at 676.  *See also EEOC v. L. B. Foster*, 123 F.3d at 754 n.4 (plaintiff need not prove that retaliatory denial of job reference caused prospective employer to reject her; such a showing is relevant only to damages, not liability); *Smith v. Secretary of Navy*, 659 F.2d 1113, 1120 (D.C. Cir. 1981) ("the questions of statutory violation and appropriate statutory remedy are conceptually distinct.  An illegal act of discrimination -- whether based on race or some other factor such as a motive of reprisal -- is a wrong in itself under Title VII, regardless of whether that wrong would warrant an award of [damages]").

> **Example 1** - CP filed a charge alleging that he was racially harassed by his supervisor and co-workers. After learning about the charge, CP's manager asked two employees to keep CP under surveillance and report back about his activities. The surveillance constitutes an "adverse action" that is likely to deter protected activity, and is unlawful if it was conducted because of CP's protected activity.
>
> **Example 2 -** CP filed a charge alleging that she was denied a promotion because of her gender. One week later, her supervisor invited a few employees out to lunch. CP believed that the reason he excluded her was because of her EEOC charge. Even if the supervisor chose not to invite CP because of her charge, this would not constitute unlawful retaliation because it is not reasonably likely to deter protected activity.
>
> **Example 3** - Same as Example 2, except that CP's supervisor invites all employees in CP's unit to regular weekly lunches. The supervisor excluded CP from these lunches after she filed the sex discrimination charge. If CP was excluded because of her charge, this would constitute unlawful retaliation since it could reasonably deter CP or others from engaging in protected activity.

The Commission's position is based on statutory language and policy considerations. The anti-retaliation provisions are exceptionally broad. They make it unlawful "to discriminate" against an individual because of his or her protected activity. This is in contrast to the general anti-discrimination provisions which make it unlawful to discriminate with respect to an individual's "terms, conditions, or privileges of employment." The retaliation provisions set no qualifiers on the term "to discriminate," and therefore prohibit *any* discrimination that is reasonably likely to deter protected activity.[39] They do not restrict the actions that can be challenged to those that affect the terms and conditions of employment.[40] Thus, a violation will be found if an employer retaliates

---

[39] *See, e.g., Knox v. State of Indiana*, 93 F.3d 1327, 1334 (7th Cir. 1996) ("[t]here is nothing in the law of retaliation that restricts the type of retaliatory act that might be visited upon an employee who seeks to invoke her rights by filing a complaint"); *Passer v. American Chemical Society,* 935 F.2d 322, 331 (D.C. Cir. 1991) (Section 704(a) broadly prohibits an employer from discriminating against its employees in any way for engaging in protected activity and does not "limit its reach only to acts of retaliation that take the form of cognizable employment actions such as discharge, transfer or demotion").

[40] Even if there were a requirement that the challenged action affect the terms or conditions of employment, retaliatory acts that create a hostile work environment would meet that standard since, as the Supreme Court has made clear, the terms and condition of employment include the intangible work environment. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64-67 (1986). For examples of
(continued...)

against a worker for engaging in protected activity through threats,[41] harassment in or out of the workplace, or any other adverse treatment that is reasonably likely to deter protected activity by that individual or other employees.[42]

This broad view of coverage accords with the primary purpose of the anti-retaliation provisions, which is to "[m]aintain[] unfettered access to statutory remedial mechanisms."[43] Regardless of the degree or quality of harm to the particular complainant, retaliation harms the public interest by deterring others from filing a charge.[44]  An interpretation of Title VII that permits some forms of retaliation to go unpunished would undermine the effectiveness of the EEO statutes and conflict with the language and purpose of the anti-retaliation provisions.

## E.    PROOF OF CAUSAL CONNECTION

In order to establish unlawful retaliation, there must be proof that the respondent took an adverse action *because* the charging party engaged in protected activity.  Proof of this retaliatory motive can be through direct or circumstantial evidence.  The evidentiary framework that applies to other types of discrimination claims also applies to retaliation claims.

---

[40](...continued)
cases recognizing that retaliatory harassment is unlawful, see *DeAngelis v. El Paso Municipal Police Officers Ass'n.*, 51 F.3d 591 (5th Cir.), *cert. denied*, 116 S. Ct. 473 (1995); *Davis v. Tri-State Mack Distributor*, 981 F.2d 340 (8th Cir. 1992).

[41]  *See McKnight v. General Motors Corp.*, 908 F.2d 104, 111 (7th Cir. 1990) ("[r]etaliation or a threat of retaliation is a common method of deterrence"), *cert. denied*, 499 U.S. 919 (1991); *Garcia v. Lawn*, 805 F.2d 1400, 1401-02 (9th Cir. 1986) (threatened transfer to undesirable location); *Atkinson v. Oliver T. Carr Co.*, 40 FEP Cases (BNA) 1041, 1043-44 (D.D.C. 1986) (threat to press criminal complaint).

[42]  For examples of cases finding unlawful retaliation based on adverse actions that did not affect the terms or conditions of employment*, see Hashimoto*, 118 F.3d at 675-76 (retaliatory job reference violated Title VII even though it did not cause failure to hire); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996) (instigating criminal theft and forgery charges against former employee who filed EEOC charge found retaliatory); *Passer*, 935 F.2d at 331 (canceling symposium in honor of retired employee who filed ADEA charge found retaliatory).

[43]  *Robinson v. Shell Oil Co.,* 117 S. Ct. 843, 848 (1997).

[44]  *Garcia*, 805 F.2d at 1405.

### 1.    Direct Evidence

If there is credible direct evidence that retaliation was a motive for the challenged action, "cause" should be found.  Evidence as to any legitimate motive for the challenged action would be relevant only to relief, not to liability.[45]

Direct evidence of a retaliatory motive is any written or verbal statement by a respondent official that s/he undertook the challenged action because the charging party engaged in protected activity.  Such evidence also includes a written or oral statement by a respondent official that on its face demonstrates a bias toward the charging party based on his or her protected activity, along with evidence linking that bias to the adverse action.  Such a link could be shown if the statement was made by the decision-maker at the time of the adverse action.[46]  Direct evidence of retaliation is  rare.

---

[45]  The basis for finding "cause" whenever there is credible direct evidence of a retaliatory motive is Section 107 of the 1991 Civil Rights Act, 42 U.S.C. §§ 2000e-2(m) and 2000e-5(g)(2)(B).  Section 107 provides that an unlawful employment practice is established whenever race, color, religion, sex, or national origin was a motivating factor, even though other factors also motivated the practice.  It further provides that a complainant who makes such a showing can obtain declaratory relief, injunctive relief, and attorneys fees but no damages or reinstatement if the respondent proves that it would have taken the same action even absent the discrimination.  Section 107 partially overrules *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), which held that a respondent can avoid liability for intentional discrimination in mixed-motives cases if it can prove that it would have made the same decision in the absence of the discrimination.

Some courts have ruled that Section 107 does not apply to retaliation claims.  *See, e.g., Woodson v. Scott Paper*, 109 F.3d 913 (3d Cir.)*, cert. denied*, 118 S. Ct. 299 (1997)*.  Those courts apply *Price Waterhouse v. Hopkins*, and therefore absolve the employer of liability for proven retaliation if the establishes that it would have made the same decision in the absence of  retaliation.  Other courts have applied Section 107 to retaliation claims.  *See, e.g.,  Merritt v. Dillard Paper* Co., 120 F.3d 1181, 1191 (11th Cir. 1997).

The Commission concludes that Section 107 applies to retaliation.  Courts have long held that the evidentiary framework for proving employment discrimination based on race, sex, or other protected class status also applies to claims of discrimination based on retaliation.  Furthermore, an interpretation of Section 107 that permits proven retaliation to go unpunished undermines the purpose of the anti-retaliation provisions of maintaining unfettered access to the statutory remedial mechanism.

---

[46]  For example, in *Merritt v. Dillard Paper Company*, 120 F.3d 1181 (11th Cir. 1997), the plaintiff testified in a co-worker's Title VII action about sexual harassment in the workplace.  Shortly
(continued...)

> **Example -** CP filed a charge against Respondent A, alleging that her supervisor sexually harassed and constructively discharged her. CP subsequently sued A and reached a settlement. When CP applied for a new job with Respondent B, she received a conditional offer subject to a reference check. When B called CP's former supervisor at A Co. for a reference, the supervisor said that CP was a "troublemaker," started a sex harassment lawsuit, and was not anyone B "would want to get mixed up with." B did not hire CP. She suspected that her former supervisor gave her a negative reference and filed retaliation charges against A and B. The EEOC investigator discovered notes memorializing the phone conversation between A and B. These notes are direct evidence of retaliation by A because they prove on their face that A told B about CP's protected activity and that A gave CP a negative reference because of that protected activity. These notes are not direct evidence of retaliation by B because they do not directly prove that B rejected CP because of her protected activity. However, the fact that B gave CP a conditional job offer and then decided not to hire her after learning about her protected activity is strong circumstantial evidence of B's retaliation. (See Section 8-II E.2. below.)

## 2. Circumstantial Evidence

The most common method of proving that retaliation was the reason for an adverse action is through circumstantial evidence. A violation is established if there is circumstantial evidence raising an inference of retaliation and if the respondent fails to produce evidence of a legitimate, non-retaliatory reason for the challenged action, or if the reason advanced by the respondent is a pretext to hide the retaliatory motive.

---

[46](...continued)
after the case was settled, the president of the company fired the plaintiff. The court found direct evidence of retaliation based on the president's statement to the plaintiff, "[y]our deposition was the most damning to Dillard's case, and you no longer have a place here at Dillard Paper Company."

---

**CIRCUMSTANTIAL EVIDENCE OF RETALIATION**

1.    Evidence raises inference that retaliation was the cause of the challenged action;

2.    Respondent produces evidence of a legitimate, non-retaliatory reason for the challenged action; and

3.    Complainant proves that the reason advanced by the respondent is a pretext to hide the retaliatory motive.

---

An initial inference of retaliation arises where there is proof that the protected activity and the adverse action were related.[47]  Typically, the link is demonstrated by evidence that:  (1) the adverse action occurred shortly after the protected activity, and (2) the person who undertook the adverse action was aware of the complainant's protected activity before taking the action.

An inference of retaliation may arise even if the time period between the protected activity and the adverse action was long, if there is other evidence that raises an inference of retaliation.  For example, in *Shirley v. Chrysler First, Inc.,*[48] a 14-month interval between the plaintiff's filing of an EEOC charge and her termination did not conclusively disprove retaliation where the plaintiff's manager mentioned the EEOC charge at least twice a week during the interim and termination occurred just two months after the EEOC dismissed her charge.[49]

Common non-retaliatory reasons offered by respondents for challenged actions include:  poor job performance; inadequate qualifications for the position sought; violation of work rules or insubordination; and, with regard to negative job references, truthfulness of the information in the reference.  For example, in one case, the plaintiff claimed that she was discharged for retaliatory reasons but the employer produced unrebutted evidence that she was discharged because of her

---

[47]  *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied*, 474 U.S. 981 (1985).

[48]  970 F.2d 39 (5th Cir. 1992).

[49]  *See Kachmar v. Sunguard Data Systems*, 109 F.3d 173 (3d Cir. 1997) (district court erroneously dismissed plaintiff's retaliation claim because termination occurred nearly one year after her protected activity; when there may be reasons why adverse action was not taken immediately, absence of immediacy does not disprove causation).

excessive absenteeism.[50]  In another case, the plaintiff alleged that his former employer's negative job reference was retaliatory, but the defendant established that the evaluation was based on the former supervisor's personal observation of the plaintiff during his employment and contemporary business records documenting those observations.[51]

Even if the respondent produces evidence of a legitimate, nondiscriminatory reason for the challenged action, a violation will still be found if this explanation is a pretext designed to hide the true retaliatory motive.  Typically, pretext is proved through evidence that the respondent treated the complainant differently from similarly situated employees or that the respondent's explanation for the adverse action is not believable.  Pretext can also be shown if the respondent subjected the charging party's work performance to heightened scrutiny after she engaged in protected activity.[52]

**Example 1**- CP alleges that R denied her a promotion because she opposed the under-representation of women in management jobs and was therefore viewed as a "troublemaker."  The promotion went to another female employee.  R asserts that the selectee was better qualified for the job because she had a Masters in Business Administration, while CP only had a college degree.  The EEOC investigator finds that this explanation is pretextual because CP has significantly greater experience working at R Company and experience has always been the most important criterion for selection for management jobs.

**Example 2** - CP alleges that R gave him a negative job reference because he had filed an EEOC charge.  R produces evidence that its negative statements to CP's prospective employer were honest assessments of CP's job performance.  There is no proof of pretext, and therefore the investigator finds no retaliation.

**Example 3** - Same as Example 2, except there is evidence that R routinely declines to offer information about former employees' job performance.  R fails to offer a credible explanation for why it violated this policy with regard to CP.  Therefore, pretext is found.

---

[50]  *Miller v. Vesta, Inc.*, 946 F. Supp. 697 (E.D. Wis. 1996).

[51]  *Fields v. Phillips School of Business & Tech.*, 870 F. Supp. 149 (W.D. Tex.), *aff'd mem.*, 59 F.3d 1242 (5th Cir. 1994).

[52]  *See, e.g., Hossaini v. Western Missouri Medical Center*, 97 F.3d 1085 (8th Cir. 1996) (reasonable person could infer that defendant's explanation for plaintiff's discharge was pretextual where defendant launched investigation into allegedly improper conduct by plaintiff shortly after she engaged in protected activity).

# 8-III  SPECIAL REMEDIES ISSUES

## A.    TEMPORARY OR PRELIMINARY RELIEF

Section 706(f)(2) of Title VII authorizes the Commission to seek temporary injunctive relief before final disposition of a charge when a preliminary investigation indicates that prompt judicial action is necessary to carry out the purposes of Title VII.  Section 107 of the ADA incorporates this provision.  The ADEA and the EPA do not authorize a court to give interim relief pending resolution of an EEOC charge.  However, the EEOC can seek such relief as part of a lawsuit for permanent relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

Temporary or preliminary relief allows a court to stop retaliation before it occurs or continues.  Such relief is appropriate if there is a substantial likelihood that the challenged action will be found to constitute unlawful retaliation, and if the charging party and/or the EEOC will likely suffer irreparable harm because of the retaliation.  Although courts have ruled that financial hardships are not irreparable, other harms that accompany loss of a job may be irreparable.  For example, in one case forced retirees showed irreparable harm and qualified for a preliminary injunction where they lost work and future prospects for work, consequently suffering emotional distress, depression, a contracted social life, and other related harms.[53]  A temporary injunction also is appropriate if the respondent's retaliation will likely cause irreparable harm to the Commission's ability to investigate the charging party's original charge of discrimination.  For example, the retaliation may discourage others from providing testimony or from filing additional charges based on the same or other alleged unlawful acts.[54]

The intake officer or investigator should notify the Regional Attorney when a charge of retaliation is filed and where temporary or preliminary relief may be appropriate.[55]

---

[53]  *EEOC v. Chrysler Corp.*, 733 F.2d 1183, 1186 (6th Cir.), *reh'g denied*, 738 F.2d 167 (1984).  *See also EEOC v. City of Bowling Green, Kentucky,* 607 F. Supp. 524 (D. Ky. 1985) (granting preliminary injunction preventing defendant from mandatorily retiring policy department employee because of his age; although plaintiff could have collected back pay and been reinstated at later time, he would have suffered from inability to keep up with current matters in police department and would have suffered anxiety or emotional problems due to compulsory retirement).

[54]  *See, e.g., Garcia v. Lawn*, 805 F.2d 1400, 1405-06 (9th Cir. 1986) (chilling effect of retaliation on other employee's willingness to exercise their rights or testify for plaintiff constitutes irreparable harm).

[55]  29 C.F.R. § 1601.23 sets forth procedures for seeking preliminary or temporary relief.  Section 13.1 of Volume I of the EEOC Compliance Manual sets forth procedures for selecting,
(continued...)

915.003                                                                                   5/98

## B.    COMPENSATORY AND PUNITIVE DAMAGES

### 1.    Availability of Damages for Retaliation Under ADEA and EPA

A 1977 amendment to the Fair Labor Standards Act authorizes both legal and equitable relief for retaliation claims under that Act.[56]   Compensatory and punitive damages therefore are available for retaliation claims brought under the EPA and the ADEA, as well as under Title VII and the ADA.[57]  The compensatory and punitive damages obtained under the EPA and the ADEA are not subject to statutory caps.

### 2.    Appropriateness of Punitive Damages

Proven retaliation frequently constitutes a practice undertaken "with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  Therefore, punitive damages often will be appropriate in retaliation claims brought under any of the statutes enforced by the EEOC.[58]

---

[55](...continued)
developing, and obtaining approval of such cases.

[56]  29 U.S.C. § 216(b).

[57]  *See Moskowitz v. Trustees of Purdue University*, 5 F.3d 279 (7th Cir. 1993) (FLSA amendment allows common law damages in addition to back wages and liquidated damages where plaintiff is retaliated against for exercising his rights under the ADEA); *Soto v. Adams Elevator Equip. Co.*, 941 F.2d 543 (7th Cir. 1991) (FLSA amendment authorizes compensatory and punitive damages for retaliation claims under the EPA, in addition to lost wages and liquidated damages).

[58]  *See Kim v. Nash Finch Co.*, 123 F.3d 1046 (8th Cir. 1997) (evidence of retaliation supported jury finding of reckless indifference to plaintiff's rights; although $7 million award for punitive damages was excessive, district court's lowered award of $300,000 was not).