UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES MALLOY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No. 05-1117 (RCL) |
| ) | |
| ALPHONSO R. JACKSON, ) | |
| Secretary Of Housing And ) | |
| Urban Development, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## DECLARATION OF STEVE ROMERO

I, Steve Romero, being first duly sworn, do hereby depose and state as follows:

1) I am currently a GS-1811-13 Special Agent with the United States Department of Agriculture (USDA), Office of Inspector General (OIG), where I have been employed since April of this year. Prior to that time, I was an 1811 Special Agent with the Nuclear Regulatory Commission (NRC) Office of Investigations.

2) Before joining the NRC, I was an 1811 Special Agent with the Department of Housing and Urban Development (HUD), Office of Inspector General (OIG) from 1995 to 2003. During much of that time, I was located in the Southwest Regional Office, which includes Fort Worth and Houston, Texas, and was under the direct supervision of Assistant Special Agent in Charge (ASAC), James Malloy. Larry Chapman, who was then the Special Agent in Charge (SAC) of the Southwest Regional Office, was my second-level supervisor.

3) When I joined HUD in 1995, I had to complete an SF-86 form as part of my application to the 1811 position. That form requests information that is used by the Office of Personnel Management (OPM) to conduct a background check. In 1996, I was informed that

1

OPM had initiated an inquiry into information that I listed regarding my previous job with the Austin, Texas Police Department. Specifically, OPM had questions about the circumstances of my departure from the Austin Police Department, and whether I had resigned in lieu of disciplinary action. On the SF-86 form, I had indicated that I voluntarily resigned from the position, which was my understanding of the situation.

4) OPM sent the findings of their inquiry to ASAC Malloy and SAC Chapman, who asked me some additional questions. ASAC Malloy and SAC Chapman also conferred with then-Deputy Inspector General for Investigations (DAIGI) Phil Newsome. In the end, all persons involved found that I had not willfully misrepresented any information on the SF-86 form, and I was issued a letter from DAIGI Newsome to that effect.

5) During my time with the HUD OIG, I transferred from Fort Worth to Houston, Texas, and later to Birmingham, Alabama. In approximately 1999, I returned to the Houston office. Immediately upon my return, Special Agent Robbie Tighe accosted me in the parking lot, asked me why I had returned to Houston, and made several racist comments. Mr. Tighe was known throughout the region as a racist who constantly made degrading comments about African Americans, Mexicans, and other minorities. Mr. Tighe made many racially-charged statements directly to me including that Mexicans are lazy and stupid, and that he would "solve" the immigration problem by standing at the border and shooting any Mexicans who tried to cross it. Mr. Tighe also referred to me as a "wetback" on several occasions, referring to my Latin American ethnicity. After the incident with Mr. Tighe in 1999, I filed a written complaint with SAC Chapman.

6) In 2000, I completed another SF-86 for my 5-year background check update. Based on the OPM inquiry I had undergone in 1996, and in an effort to exercise an abundance of

caution, I decided to check the box that indicated that I had left the Austin Police Department under unfavorable circumstances. Notwithstanding the fact that the issue had already been investigated and resolved in my favor in 1996, the Special Investigations Division of HUD launched another investigation. I was re-interviewed about my departure from the Austin PD, and I provided the same explanations I had given during the previous inquiry.

7) The Special Investigations Division also pursued several additional allegations, including that I had engaged in a romantic relationship with another HUD employee and failed to pay my government credit card on time, neither of which was true.

8) After the investigation was complete, the results were sent to ASAC Malloy and SAC Chapman for action. ASAC Malloy reviewed the record and recommended that I be given a letter of caution regarding the importance of paying the government credit card on time, which I was subsequently issued. I was not provided any information about the remainder of the allegations. A few years later, I inquired of then-SAC Lester Davis regarding the final disposition of the 2000 investigation. He told me that the investigation was closed and that none of the allegations had been substantiated.

9) In 2002, after ASAC Malloy was placed on administrative leave, Mr. Tighe was made acting ASAC and became my first-level supervisor. He continued to use racial epithets and harassed me by attempting to place me on a Performance Improvement Plan. I complained again, this time to Dan Truxal, who had temporarily assumed the SAC position after Mr. Chapman retired.

10) Finally, in 2003, I left HUD OIG to join the Nuclear Regulatory Commission's Office of Investigations because I feared that I would continue to be harassed if I remained at HUD.

11) HUD has continued to harass me even though I am no longer employed there. In 2005, I was contacted by an employee of HUD OIG who said she was calling in regards to an investigation, although she would not tell me what it was about. I refused to speak with her unless she explained the nature of her inquiry – she would not. This past year, I was contacted by two other HUD OIG agents regarding an investigation of which I was potentially a target.

12) I have had a good deal of professional success since leaving HUD OIG in 2003, including being commended as the Agent of the Year for the NRC Office of Investigations in 2006.

    I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed by:

_/s/ Steve Romero_
Steve Romero

_July 4, 2007_
Date