# AFFIDAVIT

COUNTY OF TARRANT

STATE OF TEXAS

I, Daniel Truxal, make the following statement freely and voluntarily to Frank Longoria, who has identified himself to me as a Contract EEO Investigator for the following federal agency: Department of Housing and Urban Development, investigating a complaint of discrimination filed by James M. Malloy, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know). I hereby solemnly swear or affirm:

1. What is your full name, former position title, grade, and organizational units?

   A. *See pages 3a – c*

2. How long did you work for HUD OIG with starting and ending dates?

   A.

3. Before you retired, who were your last first-level supervisor and second-level supervisor with dates? Identify them by position title and organization.

   A.

4. How long have you known James M. Malloy, former Assistant Special Agent in Charge (hereinafter the Complainant)?

   A.

5. Explain your organizational relationship to (1) Joseph Haban, Assistant Inspector General for Investigation, (2) Daniel P. Salas, Deputy Assistant Inspector General for Investigation, (3) John McCarty, Special Agent in Charge, Special Investigation Division, and (4) Complainant. Shown the dates of your organizational relationship with the above named individuals.

   A.

Page 1 of 1                                                                Initials _____

6. Please identify your race, DOB, and prior EEO activity.

A.

7. Were you aware of Complainant's prior EEO activity, opposing to take harsh disciplinary action against Special Agent Cortez Richardson and Steve Romero?

8. Complainant contends that because of his refusal to take harsh disciplinary action against Mr. Richardson and Mr. Romero, he became the subject of an investigation that resulted in his being placed on administrative leave, banned from accessing HUD OIG property and contacting HUD OIG personnel. Please respond.

A.

9. Were you aware that the Complainant was the subject of administrative investigation relevant to the Chapman investigation? Please explain.

A.

10. Were you aware that while the Complainant was under investigation, he was placed on administrative leave, banned from accessing HUD OIG property, and contacting HUD OIG personnel?

A.

11. According to Complainant, you have information concerning why and how the SID investigation on the Complainant was conducted. Please explain.

A.

12. Who was the management official that authorized the investigation of Complainant?

A.

Page 2 of 2                                            Initials 

13. According to the Complainant you were also the subject of an administrative investigation. While you were being investigated were you banned from accessing HUD OIG property, contacting HUD OIG personnel, and or placed in administrative leave?

A.

14. Do you have any relevant comments to the issues accepted for investigation that were not covered?

A.

Page 3 of 3                                                                 Initials 

Daniel J. Truxal
EEO Complaint of James Malloy
IG-03-02M

1. Daniel Joseph Truxal, former Assistant Special Agent-in-Charge, GS-14, Southwest Region, Office of Inspector General, United States Department of Housing & Urban Development, Fort Worth, Texas.

2. I worked for HUD OIG from May 1996 until my retirement on January 3, 2003.

3. My last first level supervisor was acting Special Agent-in-Charge Bob Brickley, who is the SAC in Philadelphia, Pennsylvania. My second level supervisor was Dan Salas, the Deputy Assistant Inspector General for Investigations in Washington, D.C.

4. I first met Jim Malloy in the early 90's shortly after Larry Chapman was selected to be the Special Agent-in-Charge of HUD OIG in Fort Worth. In May 1996, upon my employ with HUD OIG, Jim Malloy was my first level supervisor, and upon my promotion to ASAC, was a fellow ASAC.

5. Organizational Relationships. (1) Joseph Haban, Assistant Inspector General for Investigation, was my third level supervisor from the time of his promotion to that office in 2001 or 2002. (2) Daniel P. Salas, Deputy Assistant Inspector General for Investigation, was my second level supervisor from the time of his promotion to that office in 2002. (3) John McCarty, Special. Agent in Charge, Special Investigation Division, was the head of our "internal affairs" unit, which conducted such inquiries at the behest of Salas, Haban, the AIG's for Audit and OMAP, and for the Deputy IG and the IG. (4) Complainant, Jim Malloy, and I were ASAC's in the Southwest Region, along with Max Eamiguel. I became an ASAC in November 1998.

6. I am a white male, born 4 November 1948. I have been an alleged responsible agency official along with Larry Chapman in a complaint filed by Robert Tighe concerning his non-selection for ASAC in 1999 in which Max Eamiguel and Dan Salas were non-competitive candidates for the job. Chapman chose Eamiguel for the position. Malloy and I both recommended Eamiguel over Salas for this position. Tighe was on a competitive roster which was not used in this selection. Tighe's complaint was ultimately rejected after a hearing before the EEOC.

7. I was aware that Malloy was opposed to taking harsh action against Special Agents Cortez Richardson and Steve Romero. During the pendency of the Finn investigation in Denver, Colorado, I was acting SAC in Denver for a two month period. I was aware of the allegations against Cortez. I had a subsequent occasion to meet with Joe Haban in Headquarters some time after his promotion to AIG. We discussed Richardson's pending transfer to the Southwest Region, and although he had yet to refer the investigative file to Chapman for review, we were both aware of the issues therein. I expressed my opinion then, that harsh treatment for Cortez, i.e. termination or lengthy suspension, was unwarranted given the totality of the circumstances.

Daniel J. Truxal
EEO Complaint of James Malloy
IG-03-02M

As for Steve Romero, the internal inquiry took on a life of its own, going off on various tangents, and reaching back in time to his first employ with OIG. Again, under the totality of the circumstances, I believe Malloy's actions were appropriate, and reserved to his office.

8. Complainant Malloy contends that because of his refusal to take harsh disciplinary action against Mr. Richardson and Mr. Romero, he became the subject of an investigation that resulted in his being placed on administrative leave, banned from accessing HUD OIG property and contacting HUD OIG personnel. I believe this to be the case. On or about October 9, 2002, Malloy was summoned to John McCarty's SID shop, supposedly to "wrap up some loose ends" on the SID inquiry of Larry Chapman in mid-September 2002. On October 10, I was similarly summoned to SID, and was interviewed on October 11, 2002. During that interview, Agents John Robinson and Mike Napoleone concentrated on two areas. 1) Did Jim Malloy, Larry Chapman, or myself, ever suggest to SW Region employees, that they not cooperate with SID? 2) Was the referral of SID inquiries concerning Cortez Richardson and Steve Romero by Jim Malloy and Larry Chapman appropriate? Upon my return to Fort Worth, I learned from Max Eamiguel, that he had been directed by AIGI Dan Salas to relieve Jim Malloy of his agency equipment, and that Malloy was placed on indefinite administrative leave. I subsequently learned that Malloy was asked questions similar to the above, almost immediately after which, he was placed in an administrative leave status by Dan Salas.

9. Malloy was certainly the focus of attention by SID, but no one in Headquarters ever advised that he was the formal subject of any investigation. Rather, SID came to Fort Worth in September 2002, asking about an allegation that some time after January 2000, Chapman might have built a structure on his personal property while in a duty status. That matter had been previously investigated by SID when under the direction of its then director, Joe Haban, when Bob Groves was the AIGI. As a result of that inquiry, no adverse information was developed, and Groves advised Chapman that this was the case. Almost two years later, SID under the direction of John McCarty, when Haban is AIGI, arrives to resurrect the allegations. This appears to me to be a witch hunt and purge.

10. Eamiguel advised me that Malloy had been placed on administrative leave and that he had relieved him of his keys and other access devices. I learned later that Malloy had been banned from contacting members of HUD OIG. This had the immediate effect of barring Malloy from competing for the SAC vacancy created by Chapman's retirement at the end of September 2002.

11. As to why SID investigated Jim Malloy, I can only render an opinion. Dan Salas with the approval or at least acquiescence of Deputy IG Richard Stephens and IG Ken Donohue, directed John McCarty to send his agents to Fort Worth to "dig up something" on Larry Chapman, Jim Malloy, and myself, to the end of forcing us to leave HUD OIG. I believe that Salas and Stephens saw the Fort Worth Management team as opposing their intent to rid the agency of Cortez Richardson, as hold-overs from the reign of former IG Susan Gaffney, and therefore either uncontrollable or not on their "team." As to how SID

Daniel J. Truxal
EEO Complaint of James Malloy
IG-03-02M

conducted its inquiry, they summoned several Southwest Region employees into their Washington offices to be interrogated, and contacted the balance in the field. These actions caused the fabric of the SW regional morale to fracture, and deliberately threw a dark cloud over the person and reputation of Jim Malloy.

12. As to what management official authorized this investigation, again my opinion is that it was Dan Salas inasmuch as he was directly in charge of field operations, he was directing the actions of Max Eamiguel in relieving Jim Malloy of his duties, and was in direct contact with John McCarty.

13. In December 2002, I learned from SAC Bob Brickley that SID alleged that I failed to cooperate with them in their "investigation" of Larry Chapman by refusing to furnish certain personal day-timers to them concerning my communications with Chapman from January 2000 through September 2002. I was not placed in administrative leave, banned from contacting HUD OIG personnel, nor banned from HUD OIG property at any time from October 10 through the date of my retirement January 3, 2003. Based on SID information, SAC Brickley presented me a Letter of Reprimand dated December 12, 2002, which I subsequently grieved. As a result of the informal grievance process, Brickley withdrew the letter of reprimand.

14. My decision to retire from HUD OIG in January 2003 was based on an involuntary lateral transfer to Boston, Massachusetts, directed by Joe Haban in November 2002, to be effective February 1, 2003. With less than three years to go until mandatory retirement dictated by age, and already being retirement eligible, no one, including Haban, expected me to really take the transfer.



I have read this statement, consisting of __4__ pages, and it is true, complete, and correct to the best of my knowledge and belief.

_____
Signature

__10-29-03__
Date

Signed and sworn to before me
On this __29__ day of __Oct__, __2003__,
At __Dallas TX__.

_____
~~Neutral witness~~, notary, or ~~Investigator~~

PHYLLIS J. MACON
MY COMMISSION EXPIRES
JANUARY 19, 2005

Page 4 of 4                                    Initials _____