UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - -X

JAMES MALLOY,                      :

        Plaintiff          :

      v.                      : No. 04-1117(RJL)

                             :

ALPHONSO R. JACKSON,               :

        Defendant          :

- - - - - - - - - - - - - -X

DEPOSITION OF JOHN MC CARTY

Washington, D.C.

Tuesday, November 28, 2006

Deposition of JOHN MC CARTY, called for

examination at 3:20 p.m., at the law offices of Robert

C. Seldon & Associates, P.C., 1319 F Street, N.W., Suite

305, Washington, D.C., before Gary S. Howard, a notary

public in and for the District of Columbia, when were

present on behalf of the respective parties:

1    Q      What was your job immediately before

2 that?

3    A      I was the special agent in charge of the

4 criminal investigations division.

5    Q      When did you enter that position?

6    A      Approximately November, early November of

7 '03, I guess it was.

8    Q      What were your duties and

9 responsibilities as the special agent in charge of

10 the criminal investigations division?

11    A      I implemented the initiatives, the

12 investigative initiatives that supported the

13 missions, those that would seek out waste, fraud

14 and abuse within the programs, both internally and

15 externally.

16    Q      Prior to then, what position did you

17 have?

18    A      I was special agent in charge of the

19 special investigations division.

20    Q      When did you enter that position?

21    A      March of '02.

22    Q      And what were your duties and

1 responsibilities in summary in that position?

2    A    I oversaw internal investigations of

3 employees, major program fraud initiatives out of

4 headquarters, managed the COOP program, and

5 assisted in implementing management assistance

6 reviews.

7    Q    Were you with the HUD office of inspector

8 general before March of '02?

9    A    No, I was not.

10    Q    Mr. McCarty, what I'm going to do before

11 we get into too much substance, is ask to be marked

12 -- the Reporter will give you this -- this is

13 McCarty Exhibit 1.

14          THE COURT REPORTER:  No. 1.

15              (The document referred to

16               was marked for identification

17               as Deposition Exhibit No. 1.)

18          BY MR. SELDON:

19    Q    And this is part of the responses given

20 by, in this case, the office of inspector general

21 to questions and document requests that were put to

22 HUD OIG in this case.

1          With me so far?  You can read as much or

2  as little of this as you like. It's entirely up to

3  you.

4          (Pause.)

5          Ready?

6    A     Yes.

7    Q     If we look at Interrogatory No. 3, we

8  have asked for what boils down to the processes,

9  decisions, and actions involved in the decision to

10  interview or investigate Mr. Malloy that are

11  referenced in a certain part of the complaint.

12          What it speaks of here -- and you can see

13  on the next page -- a case being opened, Case No.

14  03-0006-I, an investigative plan that you then

15  approved for that.

16          Do you see that?

17    A     I do.

18    Q     It says here, the case was never

19  officially completed because of Mr. Malloy's

20  retirement before the report was finalized.

21          Does that comport with your understanding

22  as well?

1    A    I believe that's my recollection, yes.

2    Q    Okay. So now let's look at Interrogatory

3 4, the next page.

4         As we've worked it out with the U.S.

5 attorney's office, this concerns other

6 investigations, et cetera, et cetera, that focused

7 on Mr. Malloy.

8         It talks here about SID Case No. 03-0001-

9 I, and then it goes on and says, there is also

10 another number, 02-00047-I.

11        It then says here as we go on, that this

12 investigation, which included Mr. Malloy, closed

13 because he left OIG.

14        Is it your recollection also that this

15 investigation was closed before it was completed?

16   A    I don't recall by the numbers. I'd have

17 to see the case.

18   Q    Okay. And the problem is there's not a

19 lot of that case left around.

20   A    Could I ask you to explain?

21   Q    Sure.

22   A    02-0047, who's the subject of that

1 investigation?

2    Q    I believe it's --

3            MR. JOHNSON:  It's the same number. It's

4 the same investigation.

5            MR. SELDON:  As?

6            MR. JOHNSON:  As 01.

7            MR. SELDON:  No, there's two

8 investigations.

9            MR. JOHNSON:  No. 47 and 01 are the same.

10           MR. SELDON:  Correct.

11           MR. JOHNSON:  47 was the very last one of

12 '02. But it should have been opened in '03, so it

13 became 01

14           Does that make sense?

15           MR. SELDON:  Okay.

16           BY MR. SELDON:

17    Q    And then, if that's right, because what

18 I'm looking at is 47, is Malloy and Truxal in the

19 title.

20           MR. JOHNSON:  Right.

21           BY MR. SELDON:

22    Q    Does that ring a bell?

1    A    Yes.

2    Q    Was that to your recollection also closed

3 out -- I'm sorry -- not completed before Mr. Malloy

4 left the agency?

5    A    I don't recall.

6    Q    Do you have any reason to think that it

7 wasn't?

8         Let me tell you where I'm going with all

9 of this. I just want to make sure that we've come

10 and gone on this thing, number one, that we have

11 the entire universe of investigations focused on

12 Mr. Malloy.

13        And the question as I understand it in

14 the end is, as I read the answers here, both were

15 closed out, but not completed, because Malloy left

16 the agency before they were completed.

17    A    If I could. There was only one

18 investigation that I'm aware of that Mr. Malloy was

19 the subject of the investigation.

20    Q    Okay. And that's the 003, is that it?

21    A    I believe so.

22    Q    That's the Interrogatory 3, which is an

1 interrogatory, actually, the answer to which you

2 certify.

3          I'm sorry -- 006.

4    A    If my memory serves me, there was only

5 one investigation of Mr. Malloy.

6    Q    Okay. We're going to work through it bit

7 by bit. That's helpful. We're actually now three-

8 quarters of the way home.

9          That one, 006-I, was not, according to

10 this, was not officially completed because Mr.

11 Malloy retired.

12          Is that your understanding as well?

13    A    Mr. Seldon, unless I see the document,

14 I'm confused to the numbers.

15          I do remember the allegations, but the

16 numbers you're throwing at me confuse me.

17    Q    I got you. See, because I've got your

18 verification here and it's the second-to-last page

19 here in the document you've got there.

20          And you verified the answer to No. 3. So,

21 basically, that's a statement under penalty of

22 perjury that No. 3 is correct. And if you don't

1 think so, I need you to tell me.

2    A    Well, let me read it, then.

3    Q    Right.

4         (Pause.)

5         That one, then, it's whatever number it

6 is, 03006-I, that was, I take it, closed out before

7 it was concluded on account of Ms. Malloy's

8 retirement.

9    A    Yes, I believe it was.

10   Q    Okay. So now let me give you a document.

11 I think this will confirm that.

12        These two documents are clipped together,

13 just to make life easier for us. They don't

14 necessarily belong together.

15        This is McCarty 2.

16        THE COURT REPORTER:  No. 2.

17             (The document referred to

18             was marked for identification

19             as Deposition Exhibit No. 2.)

20        BY MR. SELDON:

21   Q    This would indicate that there is -- do

22 you recognize the first document?

1    A    Yes, I do.

2    Q    And it's entitled, investigative plan for

3 investigation 006-I.

4        You signed this, I take it.

5    A    Yes.

6    Q    What is this document or what is it a

7 part of?

8    A    It's part of the case file, the original

9 sit-down with the investigative supervisors as to

10 how they would go about investigating the

11 allegations.

12    Q    Okay. Now let's look at the page that's

13 clipped on here. And as I say, nothing particularly

14 -- there's no significance to be attached to the

15 fact that they're clipped together.

16        This is a disposition report. What is

17 this document?

18    A    This is the final close-out document we

19 use at HUD OIG for all of our investigative

20 activities.

21    Q    Is there some place on here, even on this

22 bad copy, that would indicate whether or not a

1 final report of investigation is prepared for, in

2 this case, this particular investigation no. 0006?

3          (Pause.)

4          MS. LYONS:  I'm not sure I understand the

5 question.

6          THE WITNESS:  Yes. Could you repeat the

7 question?

8          BY MR. SELDON:

9    Q    I'm trying to find out if there's

10 something on here that tells us whether or not

11 there was ever a report of investigation that was

12 issued.

13          MS. LYONS:  So the question is, by

14 looking at this piece of paper, can you tell

15 whether there was a final report of

16 investigation?

17          MR. SELDON:  Precisely.

18          MS. LYONS:  Okay.

19          THE WITNESS:  No, I can't.

20          BY MR. SELDON:

21    Q    How would you tell that?

22    A    Based on this, I wouldn't be able to.

1    Q      No, I understand. You said you can't from

2 here.

3           How would you tell that?

4    A      Well, if the closing supervisor were to

5 make a note in the detail section.

6    Q      Is that where it should be, under

7 standard SID practice and procedure?

8    A      That would not be standard. It would be

9 something that the supervisor would use on his own,

10 just as a note.

11    Q      Okay. Well, let's then think, if we had

12 access to this whole file, if there was a final

13 report prepared, should it be in that file under

14 this investigative number?

15    A      Yes, it should.

16    Q      A final report -- does that mean that it

17 has been signed by someone in particular?

18    A      Usually, it would be signed by the

19 assistant special agent in charge or the special

20 agent in charge.

21    Q      Is there anyone else who typically would

22 sign them?

1     A      No.

2     Q      Okay. So would it be fair to say, and I

3 want you to think about this, that if we wanted to

4 figure out if there was a report of investigation

5 completed in this or any other investigation, we

6 would be looking for a report of investigation that

7 was signed by a special agent in charge or

8 assistant special agent in charge of SID?

9     A      Correct.

10    Q      Okay. This note, the second, it says,

11 subject Malloy retired.

12    A      Yes.

13    Q      Do you know whose handwriting that is?

14    A      It looks like mine.

15    Q      Do you recall one way or another whether

16 there was a final report of investigation issued in

17 this case?

18    A      I don't believe there was.

19    Q      Okay. And again, I won't go back and

20 look. I haven't seen one.

21           Do you have any reason to doubt that, any

22 reason to think that -- forget it.

1          (Pause.)

2          Now what I'm going to give you, and we'll

3 mark as McCarty Exhibit 3 --

4          THE COURT REPORTER:  Three.

5               (The document referred to

6                was marked for identification

7                as Deposition Exhibit No. 3.)

8          BY MR. SELDON:

9    Q    Do you recognize this document?

10         (Pause.)

11    A    I believe so.

12    Q    What is it, as you understand it?

13    A    It looks like a final report of

14 investigation of the allegations of refusal to

15 cooperate in the initial investigation of Mr.

16 Chapman.

17    Q    Are you sure it's the final report of

18 investigation?

19    A    I believe so, yes.

20    Q    Okay. Now let's take a look at the first

21 exhibit, your answers to interrogatories, if you

22 will.

1    A    No, sir. I don't recall seeing it.

2    Q    Do you remember being briefed on the

3 contents of the document?

4    A    Yes, I do.

5    Q    When and by whom?

6    A    During the course of the investigation,

7 by Mr. Robinson, and my ASAC, Mike Napleone.  And I

8 believe the other case agent.

9    Q    Who was?

10    A    I believe it was Jerry Thomas. It could

11 have been Jerry Thomas.

12    Q    All right.

13    A    It might have been Larry Amacker. I

14 believe it was Jerry Thomas.

15    Q    Okay. And when do you recall them

16 briefing you on this?

17    A    Originally, early on, when they first did

18 not cooperate with the investigators. And then when

19 they returned from their investigation, their trip

20 to Texas.

21    Q    When do you mean, originally, early on?

22    A    At the time they went and asked Mr.

1 Truxal and Mr. Malloy for their -- I don't know

2 what term we're using here for their notes of daily

3 activity, daily activity logs.

4      Q      Okay.

5      A      And they didn't want to cooperate. They

6 didn't want to turn them over. They called me to

7 advise.

8      Q      And then what?

9      A      I asked them to make sure, go back, the

10 two of them, and make sure that they understood

11 what they were doing.

12            They did. And I believe that Mr. Truxal

13 later on complied. And Mr. Malloy stated in an

14 affidavit that he was advised by counsel not to.

15      Q      When did Truxal comply?

16      A      I think it was like within a week or two

17 after we came, after the investigators came back to

18 Washington.

19      Q      So they came back around, what?

20      A      I'm sorry. I don't recall. I'd have to

21 read this whole document or look at some facts of

22 the investigative notes.

1    Q    Okay. Let's see what's in there.

2         (Pause.)

3         Any ideas?

4    A    Well, based on the facts of the ROI, they

5 interviewed Mr. Truxal on the 19th of September.

6 And by the date of the report, October 9th, they

7 had still not received the transcripts, the

8 ledgers, from Mr. Truxal.

9    Q    So I guess it's safe to say that, within

10 a week or two, he hadn't provided those reports,

11 those documents.

12        MS. LYONS:  As far as he knows, based on

13 his review of this document.

14        MR. SELDON:  Or any other source.

15        BY MR. SELDON:

16    Q    Is that fair to say?

17    A    Based on this document, up to October

18 9th, they had not received them.

19    Q    From Mr. Truxal?

20    A    Right.

21    Q    Okay. So now we're talking about a

22 universe of discussion of this subject and the

1 investigation, which includes you, Mr. Napleone.

2          Right?

3   A     Yes, sir.

4   Q     Mr. Robinson. And Mr. Thomas and/or Mr.

5 Amacker.

6   A     According to the report, it was Mr.

7 Thomas.

8   Q     Okay. The first contact you remember of

9 some sort of another is when you were advised by

10 the agents in the field that Truxal and Malloy had

11 not given certain documents that had been requested

12 of them.

13          Is that right?

14   A     Correct.

15   Q     Outside of this group of people, did you

16 share that information with anyone else in HUD OIG?

17   A     I believe I shared it with my

18 supervisors, Mr. Salas and Mr. Haban.

19          MR. SELDON:  And you guys said that he

20 would know nothing about this.

21          BY MR. SELDON:

22   Q     And what did you tell them, in sum or

Page 38

1 documents was in the context of his being a witness

2 in the investigation of Mr. Chapman.

3          THE WITNESS:  No.

4          MR. SELDON:  Okay.

5          BY MR. SELDON:

6    Q    I guess the question is, in your view,

7 does the special investigation division have any

8 limits on the documents that it can require a HUD

9 employee to turn over in connection with one of its

10 investigations?

11    A    Yes, sir.

12    Q    What are those limits?

13    A    I believe personal documents without an

14 IG subpoena.

15    Q    Okay. Did you know as of October 9, 2002,

16 whether Mr. Malloy had refused to give over any

17 documents other than personal documents to

18 investigators?

19    A    Could you repeat that again?

20    Q    Yes. As of October 9, 2002, did you know

21 whether Mr. Malloy had refused to give over

22 documents other than personal documents to SID

Page 45

1 witnesses said that they just didn't recall, they

2 didn't hear things.

3          There were other things going on in the

4 room.

5    Q    Do you believe that you gave this

6 information about Mr. Malloy's alleged misconduct

7 to Mr. Haban or Mr. Salas, giving them both sides

8 of the results of the investigation?

9    A    Certainly.

10   Q    That would be your standard practice.

11 Right?

12   A    Certainly.

13   Q    Okay. And was it your standard practice

14 to brief them on investigations before they were

15 completed?

16   A    On occasion.

17   Q    What other occasions can you recall?

18   A    In this case, I couldn't recall.

19   Q    When you say, in this case, you couldn't

20 recall, I'm not following you.

21   A    It is standard practice to brief them

22 while investigations are going on.

Page 49

1          MS. LYONS:  To the extent that you're

2 asking him what the document says, the document

3 speaks for itself.

4          You may answer.

5          (Pause.)

6          THE WITNESS:  Just looking at it quickly,

7 I don't see what you're saying here, no.

8          BY MR. SELDON:

9    Q     Okay. Or what about not having to recall

10 anything, something?

11          (Pause.)

12    A     I don't see it.

13    Q     But as I understood you to be saying,

14 when you communicated with Mr. Haban and/or Mr.

15 Salas on the subject of this investigation, you

16 brought it -- it's your standard practice to bring

17 information that is both favorable and unfavorable

18 to the subject or target, to their attention.

19          Right?

20    A     Yes, sir.

21    Q     Okay. Let's put that aside.

22          MR. SELDON:  Now let's mark McCarty 8.

Page 50

1          THE COURT REPORTER:  No. 8.

2                  (The document referred to

3                     was marked for identification

4                     as Deposition Exhibit No. 8.)

5          BY MR. SELDON:

6     Q     Now this is a statement, I'll represent

7 to you, we have it from discovery, given by Mr. Jim

8 Sangsang, in connection with an investigation

9 involving Mr. Malloy.

10          Do you recognize this in form as

11 being -- do you recognize the format at all?

12    A     Yes, sir.

13    Q     What is it?

14    A     It's an affidavit regarding the actions

15 of that investigation by, I believe, Mr. Malloy.

16    Q     Okay. And it says -- I guess the

17 questions are put to them by Mr. Sangsang by one or

18 more of these SID investigators.

19          Is that the idea?

20    A     Yes, sir.

21    Q     And one of the questions early on is, did

22 you hear anyone at the meeting make statements

1 similar to the following -- we have to circle the

2 wagons. Let's get our stories straight. They can't

3 make you remember things.

4          Mr. Sangsang's answer was no.

5          Is this the sort of information in giving

6 both the favorable and unfavorable information to

7 Mr. Salas and/or Mr. Haban, that you would

8 communicate, according to your standard practice?

9     A    Yes, it is.

10    Q    Okay.

11          MR. SELDON:  Let's mark this as McCarty

12 Exhibit -- what are we up to?  10?

13          THE COURT REPORTER:  Nine.

14          MR. SELDON:  Sorry. I can't count.

15               (The document referred to

16                 was marked for identification

17                 as Deposition Exhibit No. 9.)

18          BY MR. SELDON:

19    Q    This is a similar affidavit. And I take

20 it -- by Mr. Ramos, who's in Region 6.  Right?

21 Basically the same type of affidavit.

22          Right?

1    A    Yes, sir.

2    Q    And I don't see in here Mr. Ramos giving

3 any indication that Mr. Malloy said anything like

4 circle the wagons, let's get our stories straight,

5 and you don't have to recall anything.

6         I take it he denied hearing Malloy say

7 anything like that.

8    A    I don't see those statements in the

9 document.

10    Q    Okay. Is there anything in here that you

11 see that Mr. Ramos indicated was questionable or

12 suspect by Mr. Malloy having stated?

13    A    No, sir.

14    Q    And once again, this is something that,

15 in the ordinary course of your business, you would

16 communicate to Mr. Salas and Mr. Haban on, if and

17 when you communicated about the investigation of

18 Mr. Malloy.

19    A    Yes, sir.

20    Q    Okay.

21         MR. SELDON:  So we're up to 10?

22         THE COURT REPORTER:  Yes.

Page 53

1                    (The document referred to

2                        was marked for identification

3                        as Deposition Exhibit No. 10.)

4          MS. LYONS:  Is there any particular

5 significance to the individual ones?

6          MR. SELDON:  I've just got to do them.

7 I've got to see if he's done it.

8          BY MR. SELDON:

9    Q    Here, we have the same sort of statement

10 by Mr. Ramirez, same format.

11         Yes?

12   A    Yes, sir.

13   Q    Asked the same questions about Malloy.

14 Right?

15   A    Yes, sir.

16   Q    He said he never heard him make them, I

17 take it.

18         Right?

19   A    Yes, sir.

20   Q    And this again would be information that

21 in the ordinary course of your business, you would

22 bring to the attention of Mr. Salas and Mr. Haban

1 in communicating with them on the subject of Mr.

2 Malloy's alleged misconduct and the investigation

3 by the special investigations division?

4　　A　　Yes, sir.

5　　　　MR. SELDON:  Let's go on to 11.

6　　　　　　(The document referred to

7　　　　　　　　was marked for identification

8　　　　　　　　as Deposition Exhibit No. 11.)

9　　　　BY MR. SELDON:

10　　Q　　And this is, is it not, an affidavit in

11 the same format by former special agent Steven

12 Romero.

13　　A　　Yes, sir.

14　　Q　　And once again, he denied hearing Mr.

15 Malloy make any of the statements that have been

16 attributed to him in the investigation.

17　　　　Is that right?

18　　A　　I don't see that here, sir.

19　　Q　　Okay. He was asked whether he, Malloy,

20 had said, we have to circle the wagons. Let's get

21 our stories straight. Or make you remember things.

22 Or he said, did anyone make those statements? And I

1 think he indicates here that Malloy never made any

2 such statements.

3          Or at least he doesn't indicate that

4 Malloy ever made any such statements.

5    A    Not in this document, no, sir.

6    Q    Okay. And then this is also something

7 that, a briefing, Haban and/or Salas.

8          I take it they were your superiors at the

9 time. Right?

10   A    Yes, sir.

11   Q    And would have brought to their

12 attention, briefing them on or communicating with

13 them on the investigation of Mr. Malloy?

14   A    Yes, sir.

15   Q    Okay.

16        MR. SELDON:  So now, let's go to McCarty

17 Exhibit No. 12.

18        THE COURT REPORTER:  No. 12.

19              (The document referred to

20              was marked for identification

21              as Deposition Exhibit No. 12.)

22        MR. SELDON:  And I will try and find a

1 way to speed this up.

2            BY MR. SELDON:

3    Q    And this is also an affidavit in the same

4 format, I take it.

5    A    Yes, sir.

6    Q    Same investigation?

7    A    Yes, sir.

8    Q    I take it that Mr. Pileggi was asked

9 whether he had heard anyone make statements, we

10 have to circle the wagons, let's get our stories

11 straight, or they can't make you remember things,

12 at this particular meeting.

13            He answered, no, I take it.

14    A    Yes, sir.

15    Q    In the ordinary course of business, this

16 is something that you would have briefed Mr. Salas

17 and Mr. Haban on?

18    A    Yes, sir.

19    Q    Okay.

20            MR. SELDON:  Let me see if I can think of

21 a way to do this more quickly.

22            (Pause.)

1              Please mark this as the next one.

2              THE COURT REPORTER:  This will be 13.

3                   (The document referred to

4                       was marked for identification

5                       as Deposition Exhibit No. 13.)

6              BY MR. SELDON:

7    Q    Is the statement in the same format, an

8 investigation by Cortez Richardson?

9    A    Yes, sir.

10   Q    And once again, Mr. Richardson is giving

11 no indication that he has heard Mr. Malloy make

12 statements of the effect we described previously?

13   A    Yes, sir.

14   Q    And this is something which, in the

15 ordinary course of communicating with Mr. Haban or

16 Mr. Salas about, you would have reported to them.

17   A    Yes, sir.

18   Q    Okay.

19              MR. SELDON:  No. 14.

20              THE COURT REPORTER:  14.

21                   (The document referred to

22                       was marked for identification

Page 58

1                  as Deposition Exhibit No. 14.)

2          BY MR. SELDON:

3     Q     This is the same statement by Mr. Donald

4  Driskill, Exhibit 14. I think we can agree on that.

5          Right?

6     A     Yes, sir.

7     Q     And he doesn't indicate that he ever

8  heard Malloy making statements about circling the

9  wagons, getting the stories straight, or making you

10  remember things.

11          Right?

12     A     Yes, sir.

13     Q     And this is something also that you would

14  have brought to Mr. Haban or Mr. Salas' attention

15  in connection with briefing them on the ongoing

16  investigation of Mr. Malloy?

17     A     Yes, sir.

18     Q     Okay.

19          MR. SELDON:  Please mark this as the next

20  one.

21          THE COURT REPORTER:  No. 15.

22                  (The document referred to

1                   was marked for identification

2                   as Deposition Exhibit No. 15.)

3          BY MR. SELDON:

4     Q     Jason Constantine. Same sort of statement

5 from Mr. Constantine, I take it.

6     A     Yes, sir.

7     Q     And this is then the same, saying that he

8 did not hear anyone make these statements, the

9 three statements we've said before.

10    A     Yes, sir.

11    Q     And I take it this also is something that

12 you would have briefed Mr. Haban and Mr. Salas on.

13    A     Yes, sir.

14    Q     Okay.

15         MR. SELDON:  Let's do 16.

16         THE COURT REPORTER:  No. 16.

17                 (The document referred to

18                  was marked for identification

19                  as Deposition Exhibit No. 16.)

20         BY MR. SELDON:

21    Q     This again is a similar statement by Mr.

22 Wohl.

Page 60

1          (Pause.)

2    A    Yes, sir.

3          MS. LYONS:  Take your time and read it.

4          THE WITNESS:  This is different, so I do

5 need to read it.

6          MR. SELDON:  Go ahead.

7          (Pause.)

8          BY MR. SELDON:

9    Q    Did Mr. Wohl give any indication that Mr.

10 Malloy had said, we have to circle the wagons,

11 let's get our stories straight, or they can't make

12 you remember things?

13   A    No, sir.

14   Q    Okay. And this is something that you

15 would have briefed Haban or Salas?

16   A    Yes, sir.

17   Q    Okay.

18          MR. SELDON:  Let's do one more, Orlando

19 Mitchell.

20          THE COURT REPORTER:  No. 17.

21                (The document referred to

22                 was marked for identification

1                    as Deposition Exhibit No. 17.)

2           BY MR. SELDON:

3     Q     This is a statement by Orlando Mitchell

4  in the same investigation.

5           Right?

6           (Pause.)

7     A     Yes, sir.

8     Q     And once again, no indication that Mr.

9  Malloy made any of the three statements that we

10 mentioned previously.

11    A     No, sir.

12    Q     And I take it that this too is something

13 that you would have reported to Mr. Haban or Mr.

14 Salas.

15    A     Yes, sir.

16    Q     Did any of the reports that you indicated

17 you gave to Ms. Haban or Mr. Salas, did you ever

18 give them to Mr. Stevens?

19    A     I don't recall.

20    Q     You don't recall doing so, I assume.

21    A     Yes, sir.

22    Q     Do you know whether they communicated

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES MALLOY,                              )
                                           )
         Plaintiff,                        )
                                           )        Case No. 1:05CV01117 (RCL)
         v.                                )
                                           )
ALPHONSO R. JACKSON,                       )
         Secretary of the U.S. Dept. of    )
         Housing and Urban Development,    )
                                           )
         Defendant.                        )
                                           )

## DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

The following responses and objections are based on information that defendant

has been reasonably able to gather to date. Defendant Alphonso R. Jackson, Secretary of

the U.S. Department of Housing and Urban Development, reserves the right to

supplement the following responses and objections if the agency's personnel become

aware of additional information.

### GENERAL OBJECTIONS

A.    Defendant objects to these discovery requests insofar as they seek to

impose requirements beyond those established under Fed. R. Civ. P. 26, 33, and 34.

Defendant will provide responses in compliance with the Rules.

B.    Defendant objects to these discovery requests insofar as they seek

information protected by (i) the attorney-client privilege; (ii) the work-product doctrine;

(iii) any other privilege, including law enforcement privilege. Defendant is providing

herewith a formal privilege log pursuant to Fed. R. Civ. P. 26(b)(5) for documents being

1



assigned Special Agent (SA) John Robinson, to investigate the anonymous complaint forwarded by Glenn Fox, dated March 15, 2001. Both this memorandum and the anonymous complaint are provided in Chapman ROI, Response to Document Request 5. SA Robinson has since left OIG. This was SID Case No. 02-0042-I. AIGI Haban explained his rationale for investigating the allegations in his affidavit in the EEO Report of Investigation for EEO Case IG-03-01-M. He also explained his reasoning in a follow-up memorandum to SID directing that the investigation be opened. John McCarty was the Special Agent in Charge of the Special Investigations Division (SID), and he and ASAC Napoleone had oversight of the investigation; however, the investigator was SA Robinson. SA Robinson developed an investigative plan, which included interviewing OIG employees, including the Plaintiff. This would have been standard operating procedure in this type of investigation. Transcripts of SA Robinson's interviews with Larry Chapman and Plaintiff are provided in Response to Document Requests 5 and 2, resepectively.

**INTERROGATORY 3:**

Provide a complete and accurate account of the processes, decisions, and actions involved in your decision to interview and/or investigate plaintiff and the interview and/or investigation of plaintiff referenced in paragraph 32 of defendant's Answer to the Complaint in this action including, but not limited to, identifying: a.) all personnel involved in the foregoing processes, decisions, and actions; b.) each such persons' role in the foregoing processes, decisions, and actions; c.) the dates of each such person's participation in the foregoing processes, decisions, and actions; and d.) all documents, which refer or relate, to your response to the foregoing Interrogatory.

**ANSWER:**    The Plaintiff was interviewed as part of SID case number SID 03-0006-I.

John McCarty as the Special Agent in Charge (SAC) of the Special Investigations

Division (SID) assigned the investigation to Special Agent (SA) John Robinson in

October 2002.  The allegations were that ASAC Malloy failed to follow HUD/OIG policy

and procedures related to the personnel actions he took against Special Agents Romero

and Richardson on September 30, 2002, potentially violating the due process rights of SA

Cortez Richardson.  Specifically, it was alleged that Plaintiff failed to consult with

agency officials in Personnel and OLC.  Additionally, it was alleged that the Plaintiff

while in his capacity as a supervisor made negative statements in an office forum on

September 23, 2002, related to an on-going OIG investigation on SAC Chapman.  ASAC

Max Eamiguel told Deputy AIGI Daniel Salas that during a training session, the Plaintiff

had told the special agents words to the effect of "we need to circle the wagons" and

"watch out for each other because SID is watching you."  Deputy AIGI Salas told AIGI

Haban, who referred it to SID for investigation.  SA Robinson created an Investigative

Plan.  His plan was to interview the Plaintiff first, then the witnesses at the meeting where

the statements allegedly took place, and others.  The Investigative Plan was approved by

SAC McCarty.  Case 03-0006-I was never officially completed because the Plaintiff

unexpectedly retired before the report was finalized.  ROI SID 03-0006-I is provided in

Response to Document Request  2.  The minutes from the Sept. 23, 2003 staff meeting is

provided to you in Response to Document Request No. 4.

**INTERROGATORY 4:**

Provide a complete and accurate account of the processes, decisions, and actions to conduct any investigation, inquiry, audit or other review, or interview of plaintiff about his performance or conduct or about the performance or conduct of another person in your employ or formerly in your employ other than those referenced in paragraphs 27 and 32 of defendant's Answer to the Complaint in this action including, but not limited to, identifying: a.) all personnel involved in the foregoing processes, decisions, and actions; b.) each such persons' role in the foregoing processes, decisions, and actions; c;) the dates of each such person's participation in the foregoing processes, decisions, and actions; and d.) all documents, which refer or relate, to your response to the foregoing Interrogatory.

**OBJECTION:** Read literally, this interrogatory concerns "any investigation, inquiry, audit or other review, or interview" about the performance or conduct of any person employed or formerly employed by OIG. The Defendant objects to this interrogatory as overly broad and burdensome, and unlikely to lead to admissible evidence.

**ANSWER:** However, SID Case number 03-0001-I (also referred at some time as SID 02-00047-I) would be responsive. SID 03-0001-I was opened and assigned to SA John Robinson in October 2002. The allegation was that the Plaintiff and ASAC Truxal refused to cooperate in the investigation of SAC Chapman by denying access to their official government ledgers, diaries, and notes. The investigative case file only contains a write-up by SA Robinson regarding the earlier interviews of the Plaintiff and ASAC Truxal on September 19, 2002 and transcripts of their interviews. It was closed in

8

January 2003 before being completed because the subjects left OIG. The entire case file is being provided to you in Response to Document Request 2.


**INTERROGATORY 5:**

Provide a complete and accurate account of all processes, decisions, and actions made, taken, or considered to be made or taken by you in response to plaintiff's proposal to suspend Special Agent Cortez Richardson referenced in paragraph 20 of defendant's Answer to the Complaint in this action or the decision to suspend Special Agent Cortez Richardson imposed by Larry D. Chapman including, but not limited to, identifying: a.) all personnel involved in the foregoing processes, decisions, and actions; b.) each such persons' role in the foregoing processes, decisions, and actions; c.) the dates of each such person's participation in the foregoing processes decisions and actions; and, d,) all documents, which refer or relate, to your response to the foregoing Interrogatory.

**ANSWER:**   The Agency investigated the Plaintiff's failure to follow agency processes and procedures, specifically OIG Manual Chapter 1752. This is the same investigation described in interrogatory 3 above. Richard Johnson, Legal Counsel, and David Nuhfer, a personnel specialist, also obtained the documentation (contained in Tab F21 of the ROI) and reviewed it to ensure there was no violation of due process. There are e-mail correspondences between Plaintiff and AIGI Haban on October 2, 2002 and between Janeen Hess and Dave Nuhfer, dated October 1, 2002, which relate to this follow-up activity. These e-mail correspondences are provided in Response to Document Request 4. Memoranda, dated September 30, 2002, from Plaintiff and SAIC Chapman to SA

## VERIFICATION

1.     I am the Deputy Counsel to the Inspector General, Office of Inspector General (OIG) for the United States Department of Housing and Urban Development ("the Department"). I am also the OIG liaison for this litigation, Malloy v. Jackson. I have been tasked and have searched for documents and answers responsive to the Plaintiff's discovery requests.

2.     I have reviewed the Defendant's Objections and First Response to Plaintiff's First Set of Interrogatories and Requests for Production, and know the contents thereof.

3.     The matters contained in the Defendant's Objections and First Responses to Plaintiff's First Set of Interrogatories and Requests for Production, are substantially correct and true and accurate to the best of my knowledge, information and belief.

4.     The source of my information and the grounds for my belief are my personal knowledge, my personal discussions and questioning of the principal witnesses in the case, information provided by our servicing personnel office at the Bureau of Public Debt and officials within the OIG, and the Department, and the official files and records available to me.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Washington, D.C.
March 23, 2006

Richard Johnson
Deputy Counsel to the Inspector General
Office of the Inspector General
U.S. Department of Housing and Urban Development

## VERIFICATION

1.    I am the Assistant Inspector General for Investigations, Office of Inspector General (OIG) for the United States Department of Housing and Urban Development ("the Department"). I have searched for documents and answers responsive to the Plaintiff's discovery requests.

2.    I have reviewed the Defendant's Objections and First Response to Plaintiff's First Set of Interrogatories and Requests for Production, and know the contents thereof.

3.    I have knowledge of the matters contained in the Defendant's Objections and First Responses to Plaintiff's First Set of Interrogatories, Interrogatories 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, and 14, and these responses are substantially correct and true and accurate to the best of my knowledge, information and belief.

4.    The source of my information and the grounds for my belief are my personal knowledge, as I was directly involved in some of the decisions, my personal discussions and questioning of the others involved in this case, and officials within the OIG, and the official files and records available to me.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Washington, D.C.
March 23, 2006

R. Joseph Haban
Assistant Inspector General for Investigations
Office of the Inspector General
U.S. Department of Housing and Urban
Development

## VERIFICATION

1.     I am the Deputy Assistant Inspector General for Inspections and Evaluations, Office of Inspector General (OIG) for the United States Department of Housing and Urban Development ("the Department").   I have searched for documents and answers responsive to the Plaintiff's discovery requests.

2.     I have reviewed the Defendant's Objections and First Response to Plaintiff's First Set of Interrogatories and Requests for Production, and know the contents thereof.

3.     I have knowledge of the matters contained in the Defendant's Objections and First Responses to Plaintiff's First Set of Interrogatories, Interrogatories 2 and 3, and these responses are substantially correct and true and accurate to the best of my knowledge, information and belief.

4.     The source of my information and the grounds for my belief are my personal knowledge, as I was directly involved in some of the decisions, my personal discussions and questioning of the others involved in this case, and officials within the OIG, and the official files and records available to me.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Washington, D.C.
March 23, 2006

John McCarty
Deputy Assistant Inspector General
for Inspections and Evaluations
Office of the Inspector General
U.S. Department of Housing and Urban
Development

## VERIFICATION

1.     I am the Deputy Assistant Inspector General for Investigations, Office of Inspector General (OIG) for the United States Department of Housing and Urban Development ("the Department"). I have searched for documents and answers responsive to the Plaintiff's discovery requests.

2.     I have reviewed the Defendant's Objections and First Response to Plaintiff's First Set of Interrogatories and Requests for Production, and know the contents thereof.

3.     I have knowledge of the matters contained in the Defendant's Objections and First Responses to Plaintiff's First Set of Interrogatories, Interrogatories 13, and these responses are substantially correct and true and accurate to the best of my knowledge, information and belief.

4.     The source of my information and the grounds for my belief are my personal knowledge, as I was directly involved in the decision, my personal discussions with others involved in this case, and officials within the OIG, and the official files and records available to me.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Washington, D.C.
March 28 , 2006

Lester A. Davis
Deputy Assistant Inspector General
for Investigations
Office of the Inspector General
U.S. Department of Housing and Urban
Development

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
OFFICE OF INSPECTOR GENERAL
OFFICE OF INVESTIGATION

# INVESTIGATIVE PLAN
### CASE MANAGEMENT RECORD

Case Number: SID 03 0006 I          Assigned Agent: John C. Robinson

Title of Investigation:    James M. MALLOY
                           ASAC  GS-14
                           Soutwest District
                           Ft. Worth, Texas

Allegation(s): ASAC MALLOY failed to follow HUD/OIG policy and procedure, relating to personnel actions taken regarding Southwest  Region Special Agents, Cortez Richardson and Steve Romero.  Additionally, it is alleged that during the week of September 23, 2002, ASAC MALLOY while in the capacity of a supervisor, made negative and unprofessional statements in office public forum, relating to an ongoing headquarters SID internal investigation.

Statute/Regulation Violation(s): Failure to follow HUD/OIG rules and policy
                                 Violations of the Rules of Conduct
                                 Conduct unbecoming of a Supervisor, disrespectful conduct

Potential Loss(s): Unknown

Type of Investigation: Employee

Part A: Investigative Plan

Initial Facts to                                    Sources/Leads
Be investigated


Interview Subject
Interview Witnesses at Meeting
Interview PBD Human resources
Seek E-Mails relating to alleged issues

DEPOSITION
EXHIBIT
#2
McCarty          1-28-08

_____               _____
Case Agent's Signature                 Supervisor's Approval

OIGM 3000 Appendix 2b

# Disposition Report

**U.S. Department of Housing
and Urban DevelopmentOffice of Inspector
General
Special Investigations Division**

| To: Assistant Inspector General for Investigation, HUD | From: |
|---|---|
| R. Joseph Halloran | **John P. McCarty, Special Agent in Charge** |
| | **Special Investigations Division** |
| | **HUD-OIG Office of Investigations** |

File Number:  SID 03 0006 I

The Report(s) of the Investigation of the Subject Case has (have) been reviewed, evaluated, and disposition made as indicated in the check list below. The nature of the Administrative Action is explained under Details, and a copy of any action letter is attached.

**Compliance Actions**
1. 1 ☐ Temporary Denial of Participation _____years _____ months.
   ☐ 2. Action reported to local VA and FmHA.
2. 3 ☐ Debarment or Suspension Recommended.
3. 4 ☐ Suspension (date) _____.
4. 5 ☐ Debarment _____ years _____ months.
5. 6 ☐ Withdrawal of Mortgagee approval.
6. 7 ☐ Warning Letter (mortgagee, mortgagor, program recipient, etc.).
7. 8 ☐ Civil Action.

**Claims Collection Actions**
8. 9 ☐ Monetary Recovery: Amount $_____10 ☐ To HUD   11 ☐ To Other _____
9. 12 ☐ No claims or debts due HUD in connection with this matter.
10. 13 ☐ Claims debt referred to the Claims Collection Officer.

**Personnel, Program, and Procedures Actions**
11. 14 ☐ Personnel Actions:
    ☐ 15 Letter of caution       ☐ 16 Verbal reprimand       ☐ 17 Removal from duty
    ☐ 18 Letter of reprimand     ☐ 19 Suspension             ☒ 20 Other (explain):
12. 21 ☐ Change in Regulations.
13. 22 ☐ No Action Warranted.              SUBJECT   MALLOY  RETIRED
14. 23 ☐ Referral to other agency.
15. 24 ☐ Corporation corrections.
16. 25 ☐ Other (explain):

Details: (Summarize details of action, including names, number of persons and firms involved. If "no action warranted," give reasons.)

| Date: 1/22/03 | Title: SAC - SID | Signature (Authorized Official) JcP.McCa |
|---|---|---|

**For OIG Use Only**

Based on the disposition(s) it is recommended:
☒ 26 That the case be closed.
(Signed)    JM 1/22/03
(Director)

27 ☐ That the Administrative Action be Credited.
(Signed)
(Director)

Authorization to Close.
☐ 28  Director (Initials and date)_____
☐ 29  GI (Initials and date)_____
☐ 30  GF (Initials and date)_____



| **Report of Investigation** | U. S. Department of Housing and Urban Development<br>Office of Inspector General<br>*Office of Investigation* |
|---|---|

| File Number:<br>**SID 02 0047 I** | District/Office: Special Investigations Division (SID) |
|---|---|

Title:

**JAMES M. MALLOY, Assistant Special Agent in Charge (ASAC)**
**GS-1811-14, Investigations Southwest District**
**U.S. Department of Housing and Urban Development**
**Fort Worth, Texas**

**DANIEL JOSEPH TRUXAL, Assistant Special Agent in Charge (ASAC)**
**GS-1811-14, Investigations Southwest District**
**U.S. Department of Housing and Urban Development**
**Fort Worth, Texas**



Narrative:

This report is predicated upon the fact, that while conducting an official OIG investigation relating to the conduct of Special Agent in Charge (SAC) Larry CHAPMAN, Fort Worth, Texas, ASAC's James MALLOY and Daniel TRUXAL refused to cooperate in the investigation as witnesses, by denying access to their official government ledgers, diaries, and notes. This denial has resulted in a negative impact upon the initial investigation, and has resulted in contributing misconduct on behalf of ASAC's MALLOY and TRUXAL for their failure to cooperate.

### STANDARDS OF CONDUCT

Refusal/Failure to cooperate in connection with an administrative investigation/during an OIG inquiry.



### DETAILS OF INVESTIGATION

On September 19, 2002, ASAC James MALLOY was interviewed at the Fort Worth, Texas office in the capacity of a witness, relating to allegations concerning SAC Larry CHAPMAN.

| Report By:<br>*[signature]*<br>JOHN C. ROBINSON<br>Asst. To the Special Agent in Charge | Approved By:<br><br>JOHN P. McCARTY<br>Special Agent In Charge | Date:<br><br><br>10/09/02 |
|---|---|---|

This report is the property of the Office of Investigation. It contains neither recommendations nor conclusions of the Office of Inspector General. It and its contents may not be reproduced without written permission. The report is FOR OFFICIAL USE ONLY and its disclosure to unauthorized persons is prohibited. Public availability to be determined under 5 U.S.C. § 552.

HUD/SID AT-SAC Jerry Thomas was present for the interview. Prior to starting the interview, MALLOY was provided a written copy of his Administrative Advisement of Rights which he signed and acknowledged (EXHIBIT 1). Malloy provided a taped sworn statement, which was transcribed(EXHIBIT 2).

Prior to the completion of the interview, and while still under oath, MALLOY was requested to provide any official government ledgers, notes and diaries he maintained, that would be pertinent to the ongoing investigation relating to CHAPMAN. MALLOY in response stated that the only diaries that he maintained, were calendar diary books issued by the Federal Law Enforcement Officers Association. MALLOY motioned to these diaries, which were lying on the floor, and initially stated that he would provide copies of the diaries relating to the pertinent years requested.

During the afternoon of September 19, 2002, at approximately 12:20PM and following the completion of the interview with MALLOY, MALLOY approached this writer and ATSAC Thomas with a written typed note. MALLOY's unsigned note stated," I contacted my FLEOA lawyer and he advised me that he did not see the nexus for my agency requesting me as a witness to produce my personal diaries in a matter involving allegations of misuse of a govt vehicle and govt time regarding another federal employee. As such, my lawyer advised me not to release copies of my personal diaries to you." This writer acknowledged the note and initialed it (EXHIBIT 3). Malloy then verbally reiterated that he had changed his mind on providing the diaries as requested, based on the advice of his FLEOA attorney.

On September 19, 2002 ASAC Daniel TRUXAL was interviewed at the Fort Worth, Texas office in the capacity of a witness, also relating to allegations concerning SAC Larry CHAPMAN. HUD/SID ATSAC Jerry Thomas was present for the interview. Prior to starting the interview, TRUXAL was provided a written copy of his Administrative Advisement of Rights which he signed and acknowledged (EXHIBIT 4). TRUXAL provided a taped sworn statement. A transcript of the taped statement is attached as (EXHIBIT 5).

Prior to the completion of the interview, and while still under oath, TRUXAL was requested to provide any official government ledgers, notes and diaries that he maintained, that would be pertinent to the ongoing investigation relating to CHAPMAN. TRUXAL stated that he maintained records of his availability hours, and did keep diaries as well. However, TRUXAL snickered and then stated that he would not share his calendars or diaries. TRUXAL stated that he would consider going through his diaries and provide copies of what he found pertinent to the investigation. However, at time of this report, TRUXAL has not contacted this writer, nor has he provided any of the requested documents.

2

# LIST OF EXHIBITS

Exhibit 1.  Administrative Advisement of Rights to ASAC James
            Malloy dated 09/19/02.

Exhibit 2.  Transcript of interview of ASAC James Malloy dated 09-
            19-02.

Exhibit 3.  Note of ASAC James Malloy denying viewing of diaries.

Exhibit 4.  Administrative Advisement of Rights to ASAC Daniel
            Truxal

Exhibit 5.  Transcript of interview of ASAC Daniel TRUXAL.

# ADMINISTRATIVE

# ADVISEMENT OF RIGHTS

Before we ask you any questions you must understand your responsibilities as an employee of the U.S. Department of Housing and Urban Development (HUD).

This is a purely administrative inquiry. The purpose of this interview is to obtain your responses to questions concerning *Private Work on Govt. Time, Misuse OGV* as relates to your official duties.

You have a duty as an employee of HUD to answer questions concerning your employment. Your failure to answer relevant and material questions, as they relate to your official duties, may cause you to be subjected to disciplinary action, including possible removal, by HUD.

Any information or evidence you furnish in response to questions put to you during this interview, or any information or evidence which is gained through your answers, may be used against you in administrative proceedings.

I have read the above advisement and understand its contents.

_____    _____
Signed                                      Date 9/19/02

_____    _____
Witness

OIGM 3000 Appendix 3c

I contacted my FLEOA lawyer and he advised me that he did not see the nexis for my agency requesting me as a witness to produce my personal diaries in a matter involving allegations of misuse of govt vehicle and govt time regarding another federal employee. As such, my lawyer advised me not to release copies of my personal diaries to you.

09/19/02  12:20 PM.  JP.

Received from ASAC - James Malloy regarding denial of diaries.

# ADMINISTRATIVE

# ADVISEMENT OF RIGHTS

Before we ask you any questions you must understand your responsibilities as an employee of the U.S. Department of Housing and Urban Development (HUD).

This is a purely administrative inquiry. The purpose of this interview is to obtain your responses to questions concerning *Private Work on Gov. Time / Illegal Use of Gov.* as relates to your official duties. *Team-Material.*

You have a duty as an employee of HUD to answer questions concerning your employment. Your failure to answer relevant and material questions, as they relate to your official duties, may cause you to be subjected to disciplinary action, including possible removal, by HUD.

Any information or evidence you furnish in response to questions put to you during this interview, or any information or evidence which is gained through your answers, may be used against you in administrative proceedings.

I have read the above advisement and understand its contents.

_____        _____
Signed                                                              14 Sept 2002
                                                                              Date

_____
Witness

Nov 04 02 03:47p    KINKO'S                    817-732-7026              P.6



U.S. Department of Housing and Urban Development

**Office of Inspector General**

451 7th St., S.W.
Washington, D.C. 20410-4500

October 10, 2002

MEMORANDUM FOR: James Malloy, Assistant Special Agent in Charge, 6AGI

FROM:  Daniel P. Salas, Deputy Assistant Inspector General for Investigations, GI

SUBJECT:  Placement on Administrative Leave

As you are aware, Special Investigations Division (SID) opened an investigation of an employee's questionable use of official time and equipment within the Office of Investigation, Fort Worth Regional Office. I have been apprised that you have refused certain information requests that have been made in connection with this investigation. Additionally, allegations have come to light concerning efforts by certain persons to interfere with the investigation and to undermine the disciplinary process associated with two other SID investigations. In the interests of ensuring a thorough and objective investigation of the allegations that have been made, and in light of your position, I cannot allow you to carry on your responsibilities as Assistant Special Agent in Charge during the pendency of the investigation. Accordingly, I am placing you on administrative leave until further notice.

You are hereby ordered to comply immediately with the following terms:

a) Turn in any and all government identification, specifically including your HUD identification badge, and your OIG credentials. Also surrender your weapon(s), vehicle, vehicle keys, office keys, card entry keys, laptop computer(s), palmtop computer(s), cellular telephone(s), pager(s), key fob(s), and any other Government- or OIG-issued equipment. You are directed to return these items to Max Y. Eamiguel, Assistant Special Agent in Charge, immediately, and to disclose any passwords or codes necessary to activate or use such equipment or open security controlled files. Prior to your surrender of such equipment, you shall not log on to, log off of, gain access to, or otherwise manipulate any equipment capable of storing information, nor may you delete any information saved on your computer or electronic storage media. To the extent that you have such identification or equipment at your home or elsewhere, you are directed to arrange to return the same to Mr. Eamiguel by 12:00 p.m. tomorrow.



DEPOSITION
EXHIBIT
#4
McCarty

D 1 of 2

b)   You are prohibited from entering, or attempting to enter the OIG Fort Worth
     Regional Office, and any other facility housing HUD or HUD OIG employees
     anywhere unless your are previously and expressly authorized to do so by me
     or my supervisors. Accordingly, you should remove, or make arrangements
     for the removal of, all of your personal possessions prior to exiting the Fort
     Worth office tomorrow. All files (hard-copy or electronic) that you deem to
     be personal must be reviewed by Mr. Eamiguel prior to their removal, and you
     are hereby expressly advised that you have no expectation of privacy in any
     materials remaining in the Fort Worth office following your departure
     tomorrow.

c)   Provide a phone number and an address where you may be reached during this
     period of Administrative Leave. Please give this information directly to Mr.
     Eamiguel.

d)   You are hereby directed to have no contact (verbal, telephonic, electronic, or
     in writing) with any HUD OIG employees, except for me or my supervisors,
     while you are on Administrative Leave during the course of the investigation.

     Should you have any question about any matter regarding your HUD employment
benefits, you may call the Bureau of Public Debt.

D2-62

**AFFIDAVIT**

U.S. Department of Housing and
Urban Development
Office of Inspector General
*Office of Investigation*

| DATE: 10/29/02 | CITY, COUNTY AND STATE: ARLINGTON, TARRANT, TEXAS |
|---|---|

I, Chumnan J. Sangsvang, Jr., having been duly sworn by Bradley P. Geno, who has identified himself to me as a Special Investigator, Office of Inspector General, U. S. Department of Housing and Urban Development, do hereby solemnly swear/affirm:

**Question:** Did you attend the "all hands" meeting at the Arlington HFI office on September 23, 2002?

**Answer:** Yes.

**Question:** Did you hear anyone at the meeting make statements similar to the following?;
"We have to circle the wagons."
"Lets get our story straight."
"They can't make you remember things."

**Answer:** No.

**Question:** Did anyone make any remarks relating to headquarters and/or SID, and provide coaching relating to dealing with them?

**Answer:** Larry Chapman told us that if we were interviewed and did not like the way the questioning was going that we could get a lawyer at anytime.

**Question:** Did you hear any manager of the Southwest region make any remarks that you would consider improper or unprofessional for a manager to make in that meeting?

**Answer:** No.

**Question:** Do you have anything you would like to add to this statement?:

**Answer:** No.

I have read the above statement consisting of 2 pages and it is true and complete to the best of my knowledge and belief. I have initialed each page and all corrections.

/s/


DEPOSITION
EXHIBIT
#8
McCarty

OIGM 3000 Appendix 5a                                                      Form HUD-1409

Subscribed and sworn before me at

2201 East Lamar blvd., suite 275
Arlington, TX 76006

on this 29th day of October,  2002.

/s/
Special Investigator, HUD OIG Investigation

WITNESSED:

/s/

**AFFIDAVIT**

U.S. Department of Housing
and Urban Development
Office of Inspector General
*Office of Investigation*

| DATE: October 30, 2002 | CITY, COUNTY AND STATE:  Albuquerque, NM |
|---|---|
|  |  |

I, Andres Ramos III, having been duly sworn by John C. Robinson, who has identified himself to me as a Special Investigator, Office of Inspector General, U. S. Department of Housing and Urban Development, do hereby solemnly swear/affirm:

**Question:  Did you attend the "all hands" meeting at the Arlington HFI office on September 23, 2002?**

Answer: Yes,

**Question:  Did you hear anyone at the meeting make statements similar to the following?;**
**"We have to circle the wagons."**
**"Lets get our story straight."**
**"They can't make you remember things."**

Answer: No

**Question:  Did anyone make any remarks relating to headquarters and/or SID, and provide coaching relating to dealing with them?**

Answer:   The only remark I can recall came from SAC Larry Chapman who recommended that we join FLEO so that we would be provided council during internal investigations.

**Question:  Did you hear any manager of the Southwest region make any remarks that you would consider improper or unprofessional for a manager to make in that meeting?**

Answer: No

**Question:  Do you have anything you would like to add to this statement?:**

Answer: No

I have read the above statement consisting of __ pages and it is true and complete to the best of my knowledge and belief.  I have initialed each page and all corrections.

DEPOSITION
EXHIBIT
#9
McCarty
ENGAD-Bayonne, N. J.

/s/ [signature]

**Subscribed and sworn before me at**

Alburqurqy, NM

**on this 30th day of October,  2002.**

/s/ [signature]

~~Special Investigator,~~ **Special Investigator, HUD OIG Investigation**

AT SAC

**WITNESSED:**

/s/

**AFFIDAVIT**

U.S. Department of Housing
and Urban Development
Office of Inspector General
*Office of Investigation*

| DATE: October 30, 2002 | CITY, COUNTY AND STATE: Albuerquerque, NM |
|---|---|
| | |

I, Manuel G. Ramirez, having been duly sworn by John C. Robinson, who has identified himself to me as a Special Investigator, Office of Inspector General, U. S. Department of Housing and Urban Development, do hereby solemnly swear/affirm:

**Question:** Did you attend the "all hands" meeting at the Arlington HFI office on September 23, 2002?

 **Answer: Yes.**

**Question:** Did you hear anyone at the meeting make statements similar to the following?;
**"We have to circle the wagons."**
**"Lets get our story straight."**
**"They can't make you remember things."**

 **Answer: I did not hear anyone make any such or similar statements.**

**Question:** Did anyone make any remarks relating to headquarters and/or SID, and provide coaching relating to dealing with them?

 **Answer:** SID and Headquarters were mentioned during the meeting by SAC Larry Chapman in the context that they may be looking into various issues, however, I did not hear anyone provide any coaching on how to deal with them. SAC Larry Chapman did comment that everyone was entitled to or should get an attorney if contacted by SID and/or Headquarters regarding those issues and also that everyone should join FLEOA.

**Question:** Did you hear any manager of the Southwest region make any remarks that you would consider improper or unprofessional for a manager to make in that meeting?

 **Answer:** I did not hear any of the managers make any comments during the meeting that I would consider improper or unprofessional.

**Question:** Do you have anything you would like to add to this statement?:

 **Answer: No.**

OIGM 3000 Appendix 5a



Form HUD-1409

I have read the above statement consisting of 2 pages and it is true and complete to the best of my knowledge and belief.  I have initialed each page and all corrections.

/s/

Subscribed and sworn before me at

_Albuquerque, NM_

on this 30th day of October,  2002.


/s/

~~Special Investigator~~, HUD OIG Investigation
AT- SAC.


WITNESSED:

/s/

**AFFIDAVIT**

U.S. Department of Housing
and Urban Development
Office of Inspector General
*Office of Investigation*

| DATE: October 29, 2002 | CITY, COUNTY AND STATE: Houston, Harris County, Texas |
| --- | --- |
| | |

I, Steve Romero, having been duly sworn by John C. Robinson, who has identified himself to me as a Special Investigator, Office of Inspector General, U. S. Department of Housing and Urban Development, do hereby solemnly swear/affirm:

**Question:** Did you attend the "all hands" meeting at the Arlington HFI office on September 23, 2002?

 **Answer:** Yes,

**Question:** Did you hear anyone at the meeting make statements similar to the following?
"We have to circle the wagons."
"Lets get our story straight."
"They can't make you remember things."

**Answer:** I do remember SAC Chapman stating that we needed to be careful about using our assigned computers, cell phones, and pagers for personal reasons. In my mind, I thought SAC Chapman's comments we said to scare us as was done in previous quarterly meetings. I do recall some similar statement that was said at the meeting that referred to circling the wagons, but I do not remember who said it or the context of the statement.

This meeting was like all the previously held quarterly meetings; I wasn't paying total attention to everything that was being said. These meetings are informal and at times several people could be having a conversation between themselves when any of the mangers were talking. Most of the agents can't wait to get out of the meeting.

**Question:** Did anyone make any remarks relating to headquarters and/or SID, and provide coaching relating to dealing with them?

 **Answer:** I do remember SAC Chapman stating that SID was investigating him. SAC Chapman informed us that we had a right to counsel if SID wanted to talk to us about an investigation that was conducted on any of us and if we were the subjects of the investigation. He also stated I believe that we should have our FLEOA membership up to date. I took the advise from SAC Chapman as being informative and helpful if any of us were investigated by SID.

OIGM 3000 Appendix 5a

DEPOSITION
EXHIBIT
#11
McGinty

Form HUD-1409



ASAC Malloy also reiterated the same message as SAC Chapman. ASAC Malloy also stated to everyone at meeting that we needed to tell the truth to questions asked by SID.

Question: Did you hear any manager of the Southwest region make any remarks that you would consider improper or unprofessional for a manager to make in that meeting?



Answer: I did not hear any comments or statements made by any manager of the Southwest District that I interpreted as improper or unprofessional.

Question: Do you have anything you would like to add to this statement?:



Answer: No.

I have read the above statement consisting of 2 pages and it is true and complete to the best of my knowledge and belief. I have initialed each page and all corrections.

/s/ *Steve Romero*

Subscribed and sworn before me at

*Houston, TX*

On this 28th day of October 2002.

/s/ *[signature]* AT/SAC
Special Investigator, HUD OIG Investigation

WITNESSED:

/s/

**AFFIDAVIT**

U.S. Department of Housing and
Urban Development
Office of Inspector General
*Office of Investigation*

| DATE: October 28,2002 | CITY, COUNTY AND STATE:  Houston, Harris County, Texas |
|---|---|
|  |  |

I, David B. Pileggi, having been duly sworn by John C. Robinson, who has identified himself to me as a Special Investigator, Office of Inspector General, U. S. Department of Housing and Urban Development, do hereby solemnly swear/affirm:

**Question:**  Did you attend the "all hands" meeting at the Arlington HFI office on September 23, 2002?

**Answer:  Yes.**

**Question:**  Did you hear anyone at the meeting make statements similar to the following?;

**"We have to circle the wagons."**
**"Lets get our story straight."**
**"They can't make you remember things."**

**Answer: No.**

**Question:**  Did anyone make any remarks relating to headquarters and/or SID, and provide coaching relating to dealing with them?

**Answer:**  SAC Chapman mentioned that there was a current SID investigation or had been an SID investigation in the Southwest District and he warned all agents that they should be careful with their cellular telephones and government vehicles.

**Question:**  Did you hear any manager of the Southwest region make any remarks that you would consider improper or unprofessional for a manager to make in that meeting?

**Answer: No.**

**Question:**  Do you have anything you would like to add to this statement?:

**Answer:  No.**



DEPOSITION
EXHIBIT
#12
McGnTy

OIGM 3000 Appendix 5a

Form HUD-1409

*DBP* I have read the above statement consisting of 2 pages and it is true and complete to the best of my knowledge and belief. I have initialed each page and all corrections. *DBP*

/s/ *David B. Piliggi*, S/A, HUD-OIG, 28OCT20∝
DAVID B. PILEAGI.

Subscribed and sworn before me at

Huston, TX.

on this 28th day of October, 2002.

/s/

~~Special Investigator~~, HUD OIG Investigation
AT/SAC

WITNESSED:

/s/

**AFFIDAVIT**

U.S. Department of Housing and
Urban Development
Office of Inspector General
*Office of Investigation*

| DATE: | CITY, COUNTY AND STATE: |
|-------|-------------------------|
| 10-29-02 | ARLINGTON, TX |

*CₑR* I, Cortez Richardson, having been duly sworn by Bradley P. Geno, who has identified himself to me as a Special Investigator, Office of Inspector General, U. S. Department of Housing and Urban Development, do hereby solemnly swear/affirm:

**Question:** Did you attend the "all hands" meeting at the Arlington HFI office on September 23, 2002?

**Answer:** Yes.

**Question:** Did you hear anyone at the meeting make statements similar to the following?;
"We have to circle the wagons."
"Lets get our story straight."
"They can't make you remember things."

**Answer:** No.

**Question:** Did anyone make any remarks relating to headquarters and/or SID, and provide coaching relating to dealing with them?

**Answer:** No.

**Question:** Did you hear any manager of the Southwest region make any remarks that you would consider improper or unprofessional for a manager to make in that meeting?

**Answer:** No.

**Question:** Do you have anything you would like to add to this statement?:

**Answer:** No.

I have read the above statement consisting of 2 pages and it is true and complete to the best of my knowledge and belief. I have initialed each page and all corrections.


/s/



DEPOSITION
EXHIBIT
#13
McCarty

Subscribed and sworn before me at

2201 East Lamar Blvd., Suite 275
Arlington, TX 76006

on this 29th day of October, 2002.

/s/
Special Investigator, HUD OIG Investigation


WITNESSED:

/s/

**AFFIDAVIT**

**U.S. Department of Housing
and Urban Development
Office of Inspector General
*Office of Investigation***

| DATE: 10/29/02 | CITY, COUNTY AND STATE: HOUSTON, HARRIS COUNTY, TEXAS |
|---|---|
| | |

I, DONALD D. DRISKILL, having been duly sworn by John C. Robinson, who has identified himself to me as a Special Investigator, Office of Inspector General, U. S. Department of Housing and Urban Development, do hereby solemnly swear/affirm:

**Question:** Did you attend the "all hands" meeting at the Arlington HFI office on September 23, 2002?

**Answer:** YES,

**Question:** Did you hear anyone at the meeting make statements similar to the following?;
"We have to circle the wagons."
"Lets get our story straight."
"They can't make you remember things."

**Answer:** NO

**Question:** Did anyone make any remarks relating to headquarters and/or SID, and provide coaching relating to dealing with them?

**Answer:** YES. I RECALL LARRY CHAPMAN, DURING HIS INTRODUCTORY REMARKS FOR THE MEETING, MAKING A STATEMENT TO THE EFFECT THAT SID WAS OR MIGHT BE CONDUCTING AN INVESTIGATION IN THE REGION. HIS REMARKS WERE THAT WE SHOULD BE AWARE, AS WE ALL KNOW, THAT WE MUST ANSWER QUESTIONS ASKED AND THAT WE, IF NEEDED, MAY REQUEST COUNSEL PRESENT. THESE REMARKS WERE MADE IN PASSING AND NOTHING WAS SAID THAT I FELT WAS UNWARRANTED FOR A MANAGER TO SAY OR THAT WAS INCORRECT.

**Question:** Did you hear any manager of the Southwest region make any remarks that you would consider improper or unprofessional for a manager to make in that meeting?

**Answer:** NO

**Question:** Do you have anything you would like to add to this statement?:

OIGM 3000 Appendix 5a



Form HUD-1409

**Answer:    I HAVE, IN THE PAST, BEEN A MANAGER OF AN INVESTIGATIVE ORGANIZATION AND BELIEVE THAT HAD ANY INAPPROPRIATE STATEMENTS, COMMENTS OR ADVICE BEEN GIVEN IN THAT MEETING, I WOULD HAVE NOTED IT AND WOULD RECALL IT.   I HAVE NO RECOLLECTION NOR DO I BELIEVE ANY UNTOWARD OR INAPPROPRIATE STATEMENTS OR COMMENTS MADE.**

I have read the above statement consisting of _2_ pages and it is true and complete to the best of my knowledge and belief.   I have initialed each page and all corrections.

/s/ *[signature]*   10/29/02

Subscribed and sworn before me at

*[handwritten: Houston TX]*

on this 28th day of October, 2002.

/s/ *[signature]*
**Special Investigator, HUD OIG Investigation**

**WITNESSED:**

/s/

AFFIDAVIT

U.S. Department of Housing and
Urban Development
Office of Inspector General
*Office of Investigation*

| DATE: 10/29/02 | CITY, COUNTY AND STATE: Arlington, Texas |
|---|---|
| | |

I, Jason Constantine, having been duly sworn by Bradley P. Geno, who has identified himself to me as a Special Investigator, Office of Inspector General, U. S. Department of Housing and Urban Development, do hereby solemnly swear/affirm:

**Question:** Did you attend the "all hands" meeting at the Arlington HFI office on September 23, 2002?

**Answer:** Yes.

**Question:** Did you hear anyone at the meeting make statements similar to the following?;
"We have to circle the wagons."
"Lets get our story straight."
"They can't make you remember things."

**Answer:** No, I did not.

**Question:** Did anyone make any remarks relating to headquarters and/or SID, and provide coaching relating to dealing with them?

**Answer:** Not that I remember.

**Question:** Did you hear any manager of the Southwest region make any remarks that you would consider improper or unprofessional for a manager to make in that meeting?

**Answer:** No, not that I remember.

**Question:** Do you have anything you would like to add to this statement?;

**Answer:** I am answering as true as I can remember.

I have read the above statement consisting of 2 pages and it is true and complete to the best of my knowledge and belief. I have initialed each page and all corrections.

/s/ Jason C____

Subscribed and sworn before me at

2201 East Lamar Blvd., suite 275
Arlington, TX. 76006



DEPOSITION
EXHIBIT
#15
McGinty

OIGM 3000 Appendix 5a                                    Form HUD-1409

on this 29th day of October,  2002.

/s/
**Special Investigator, HUD OIG Investigation**

**WITNESSED:**

/s/

**AFFIDAVIT**

U.S. Department of Housing and
Urban Development
Office of Inspector General
*Office of Investigation*

| DATE: 10-28-02 | CITY, COUNTY AND STATE:  Arlington, Tarrant, Texas. |
| --- | --- |

I, Marcus David Wohl, having been duly sworn by Larry Amaker, who has identified himself to me as an Assistant to the Special Agent in Charge, Special Investigations Division, Office of Inspector General, U. S. Department of Housing and Urban Development, do hereby solemnly swear/affirm:

**Question:  Did you attend the "all hands" meeting at the Arlington HFI office on September 23, 2002?**

**Answer: Yes,**

**Question:  Did you hear anyone at the meeting make statements similar to the following?;**
"We have to circle the wagons."
"Lets get our story straight."
"They can't make you remember things."

**Answer: To the first two no.  I can remember something to the effect that if you are being interviewed you should answer truthfully, but if you can't remember than say you can't remember rather than guess or give an incorrect answer. In addition, I remember it being explained that if you are interviewed you should be forthcoming to areas that the investigator may not have bought up. E.g. If you know someone that works for the IG that may have violated a policy or committed an illegal act than you have an obligation to the IG's office to bring that information forward.**

**Question:  Did anyone make any remarks relating to headquarters and/or SID, and provide coaching relating to dealing with them?**

**Answer:  As answered above, we were advised to answer truthfully and be forthcoming.  I would perceive that as being coached, but in a positive way as opposed to a negative way.**

**Question:  Did you hear any manager of the Southwest region make any remarks that you would consider improper or unprofessional for a manager to make in that meeting?**

**Answer: No, It was explained that we had a lot of new policy and like it or not we will have to do it.**

**Question: Do you have anything you would like to add to this statement?:**

**Answer: No.**

OIGIn -.- -) Appendix 5a



DEPOSITION
EXHIBIT
#16
M County     11-28-02

Form HUD-1409

I have read the above statement consisting of 2 pages (including this one) and it is true and complete to the best of my knowledge and belief. I have initialed each page and all corrections.

/s/


Subscribed and sworn before me at

on this 28th day of October, 2002.


/s/
Assistant to the Special Agent in Charge, Special Investigations Division, HUD OIG I


WITNESSED:

/s/

## AFFIDAVIT

**U.S. Department of Housing
and Urban Development
Office of Inspector General**
*Office of Investigation*

| DATE: october 29,2002 | CITY, COUNTY AND STATE: Houston, Texas |
|---|---|
| | |

I, <u>ORLANDO MITCHELL</u>, having been duly sworn by John C. Robinson, who has identified himself to me as a Special Investigator, Office of Inspector General, U. S. Department of Housing and Urban Development, do hereby solemnly swear/affirm:

**Question:** Did you attend the "all hands" meeting at the Arlington HFI office on September 23, 2002?

**Answer:** _YES____,

**Question:** Did you hear anyone at the meeting make statements similar to the following?;
**"We have to circle the wagons."**
**"Lets get our story straight."**
**"They can't make you remember things."**

**Answer:** NO

**Question:** Did anyone make any remarks relating to headquarters and/or SID, and provide coaching relating to dealing with them?

**Answer:** YES. LARRY CHAPMAN DISCUSSED THE GENERAL ROLE AND FUNCTION OF SID. SID DOES INTERNAL AFFAIRS INVESTIGATIONS. IF YOU ARE A TARGET OR A WITNESS TO AN INVESTIGATION, BE COOPERATIVE AND TELL THE TRUTH.

**Question:** Did you hear any manager of the Southwest region make any remarks that you would consider improper or unprofessional for a manager to make in that meeting?

**Answer:** NO.

**Question:** Do you have anything you would like to add to this statement?:

**Answer:** NO

I have read the above statement consisting of _1_ pages and it is true and complete to the best of my knowledge and belief. I have initialed each page and all



**corrections.**

/s/ *[signature]*

**Subscribed and sworn before me at**

HOUSTON, TX

**on this 28th day of October,  2002.**

/s/ *[signature]* A7/SAC .
**Special Investigator, HUD OIG Investigation**

**WITNESSED:**

/s/