MGB Reporting, Inc.

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF COLUMBIA

 3     - - - - - - - - - - - - - -X

 4     JAMES MALLOY,              :

 5              Plaintiff         :

 6        v.                      :

 7                                : No. 05-1117 (RCL)

 8     ALPHONSO R. JACKSON,       :

 9              Defendant         :

10     - - - - - - - - - - - - - -X

11              DEPOSITION OF MICHAEL STEPHENS

12                      Washington, D.C.

13                   Tuesday, March 6, 2007

14         Deposition of MICHAEL STEPHENS, called for

15  examination at 10:10 a.m., at the law offices of Robert

16  C. Seldon & Associates, P.C., 1319 F Street, N.W., Suite

17  305, Washington, D.C., before Gary S. Howard, a notary

18  public in and for the District of Columbia, when were

19  present on behalf of the respective parties:

20

21

22
```

9805 Korman Court, Potomac, MD 20854
301-983-9315 ~ www.mgbreporting.com

MGB Reporting, Inc.

Page 21

1   Q   Okay. Just think for a minute. Do you
2   have any -- you said you don't believe. I just want
3   to be clear.
4       Do you have any reason to think that you
5   were involved in that?
6   A   No, I don't.
7   Q   Okay. That's fair.
8   A   I don't recall that at all.
9   Q   That's fair, sir. Now I'd like to go
10  back and focus on these activities to begin with,
11  or actions that are part of what comprise the
12  subject matter of this complaint.
13  A   Okay.
14  Q   The first is placing Mr. Malloy on
15  administrative leave.
16      The second is not restoring him to active
17  duty.
18      And the third is relieving him, Mr.
19  Malloy, of supervisory responsibility.
20      The first, placing him on administrative
21  leave, happened on or about October 10th, 2002. The
22  second action of not restoring him to active duty,

MGB Reporting, Inc.

Page 23

```
 1        BY MR. SELDON:
 2        Q    Is there a standard operating procedure
 3   in your organization on how a decision like the
 4   decision to place Mr. Malloy on administrative
 5   leave, should be made?
 6        A    Generally, an issue would be brought
 7   forth to the employee's manager, and that issue
 8   would be discussed with our general counsel's
 9   office and with the bureau of public debt, which is
10   a contract relationship we have that deals with our
11   human resource issues -- hiring, a wide variety of
12   human resource issues.
13             It would be discussed with that
14   supervisor, our legal counsel, and representatives
15   of the bureau of public debt.
16             And a decision would be made whether they
17   felt it was appropriate to put a person on
18   administrative leave.  Administrative leave is not
19   an adverse action. The person goes away from the
20   work site with full pay.
21             Normally, once a decision is made by a
22   supervisor, and a comfort level is arrived at by
```

MGB Reporting, Inc.

Page 24

1  that supervisor, I am notified of that process and
2  then it's implemented.
3      Q    Just so we're clear on what you said
4  about what an employee is or is not subject to on
5  administrative leave, in Mr. Malloy's case, do you
6  know one way or another whether he was directed to
7  have no contact with any HUD OIG employees, other
8  than supervisors?
9      A    No, I don't know.
10     Q    You mentioned the supervisor of the
11 person being involved in the decision. And in Mr.
12 Malloy's case, he was the assistant special agent
13 in charge of Region 6, headquartered in Texas.
14          And at that time, in October of 2002, the
15 record has shown there was no special agent in
16 charge.
17          Is it correct to say, then, that Daniel
18 Dallas, at that time the deputy assistant inspector
19 general for investigations, was Mr. Malloy's first-
20 line supervisor?
21     A    Yes.
22     Q    Now, Mr. Salas has given testimony under